# NO. 12-07-00064-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CITIZENS NATIONAL BANK, APPELLANT* | *§* | *APPEAL FROM THE 4TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *VELMA G. BRYCE, ET AL., APPELLEES* | *§* | *RUSK COUNTY, TEXAS* |

# NO. 12-07-00103-CV

| | | |
|---|---|---|
| | *§* | |
| *IN RE: CITIZENS NATIONAL BANK, RELATOR* | *§* | *ORIGINAL PROCEEDING* |
| | *§* | |

---

## *OPINION*

By petition for writ of mandamus and interlocutory appeal, Relator/Appellant Citizens National Bank challenges the trial court's order denying its motion to compel arbitration and stay the underlying proceedings.[1]  We deny the Bank's petition for writ of mandamus and affirm the trial court's order.

---

[1] The real parties in interest/appellees are Velma G. Bryce, individually; Jerry Ann Bryce Blackwell, Mary Jane Bryce Wilhite, and Judy Lee Bryce McMillin, Successor Permanent Independent Co-Administrators of the Estate of Homer L. Bryce, Deceased; and Bryce Interests, Ltd.  The respondent in the mandamus proceeding is the Honorable J. Clay Gossett, Judge of the 4th Judicial District Court, Rusk County, Texas.

BACKGROUND

The underlying dispute arises from the Bank's alleged misappropriation and mismanagement of certain assets, including a substantial number of Fredonia Bancshares, Inc. common stock, that were formerly the community property of Homer L. Bryce and his wife, Velma.

Homer died on June 29, 1996. According to the terms of his will, the Bank was appointed independent executor of Homer's estate and trustee of the Homer Bryce Marital Deduction Trust (the "marital trust") created by the will. In July 1996, Velma transferred her one-half interest in the Fredonia stock into the Velma G. Bryce 1/2 Community Property Account (the "CP Account") at the Bank. Velma and the Bank executed an investment management account agreement under which the Bank agreed to manage the holdings in the CP account. The other one-half interest in the Fredonia stock was administered by the Bank under the terms of Homer's will.

On January 29, 1998, Velma, the Bank, as trustee of the marital trust, and Bryce Management Co., L.L.C. ("Bryce Management") signed an agreement forming Bryce Interests, Ltd., a Texas limited partnership ("Bryce Interests" or the "partnership"), to be owned as follows:

**General partner**

| | |
|---|---|
| Bryce Management, whose members and managers were Velma, individually, and the Bank, as trustee of the marital trust | 1% |

**Limited partners**

| | |
|---|---|
| Velma, individually | 49.5% |
| The Bank, as trustee of the marital trust | 49.5% |

In February 1998, after the Texas Secretary of State acknowledged the approval of the limited partnership, the Bank, as independent executor of Homer's estate, distributed the estate's Fredonia stock to the marital trust. Velma and the Bank, as trustee of the marital trust, then contributed their shares of Fredonia stock and other assets to Bryce Interests.[2] The partnership agreement provided that any of the duties of the general partner could be delegated to any person or entity by power of attorney or other form of delegation. Accordingly, Velma and the Bank, as trustee of the marital

---

[2] As a result of a merger between Fredonia and First United Bancshares, Inc., the Fredonia stock was exchanged for First United stock. For consistency, we refer to the stock as the Fredonia stock throughout this opinion.

trust, also executed, on behalf of Bryce Interests, an investment account agreement authorizing the Bank to manage the contributed assets (the "Bryce assets"). Under the agreement, the Bank was appointed as agent and attorney in fact for Bryce Interests "with the broadest possible power of management and control over all assets in the Account."

Ultimately, Velma and her daughters became convinced that the Bank had misappropriated and mismanaged certain Bryce assets. Consequently, on May 19, 2005, Velma, her daughters in their representative capacities, and Bryce Interests (collectively the "Bryce Plaintiffs") sued the Bank, and others who are not parties here, for breach of fiduciary duty and negligence.[3] As pertinent to this proceeding, the Bryce Plaintiffs alleged that (1) former employees of the Bank made personal purchases of merchandise at the expense of the partnership; (2) the Bank mismanaged the Bryce assets, which mismanagement included the Bank's failure to timely sell all or a large portion of the Fredonia stock and reinvest the proceeds, to the detriment of the Bryce Plaintiffs; (3) an employee of the Bank gave them erroneous tax advice; and (4) the Bank failed to timely disclose to Arthur Andersen certain gifts made by Velma that were to be included on her gift tax returns.[4]

On January 12, 2007, the Bank filed a motion to compel arbitration and to stay the proceedings in the trial court pending arbitration. The Bank cited the arbitration clause contained in the Bryce Interests partnership agreement, which required arbitration "if any dispute [arose] between [the partners] relating to this Agreement" that could not be settled through other specified procedures. The Bryce Plaintiffs responded that the 1998 partnership agreement does not apply to the lawsuit, but even if it did, the Bank had waived its right to compel arbitration.

On February 1, 2007, after a hearing, the trial court denied the Bank's motion, finding that

---

[3] On April 19, 2005, the Bank tendered its resignation as independent executor of the Homer L. Bryce estate. The probate court accepted the resignation and appointed Jerry Ann Bryce Blackwell, Mary Jane Bryce Wilhite, and Judy Lee McMillin, the daughters of Homer and Velma Bryce, to serve as successor permanent independent co–administrators of the estate.

[4] During the time the alleged misconduct occurred, the Bank acted as (1) independent executor of Homer's estate; (2) trustee of the marital trust, which was a member and a manager of Bryce Management and a limited partner of Bryce Interests; (3) manager of the CP Account; and (4) manager of the Bryce Interests investment account. The Bank concedes that the estate is not required to arbitrate its claims against the Bank and that Velma is not required to arbitrate any claims she makes relating to the Bank's management of the Fredonia stock prior to the funding of the partnership in February 1998.

3

the acts complained of in the lawsuit do not fall within the scope of the 1998 partnership agreement and that the Bank had waived its right to compel arbitration. Thereafter, the Bank filed this original mandamus proceeding and interlocutory appeal. We stayed the proceedings in the trial court pending our disposition on the merits.[5]

## MANDAMUS OR INTERLOCUTORY APPEAL?

In drafting an arbitration provision, parties are free to specify which arbitration act governs their agreement to arbitrate. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477-79, 109 S. Ct. 1248, 1254-56, 103 L. Ed. 2d 488 (1989). Their choice of which act applies determines what procedural vehicle is available for relief when a trial court denies arbitration. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). If the trial court's denial of arbitration is based on the FAA, mandamus is the appropriate avenue for relief. *Id.* If the denial is based on the TAA, the order is subject to interlocutory appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (Vernon 2005). The FAA and the TAA are not mutually exclusive, however. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex. 2006). The FAA preempts state law only to the extent the state law conflicts with the FAA's purpose of enforcing the parties' contractual obligation to arbitrate. *Volt*, 489 U.S. at 477-78, 109 S. Ct. at 1255; *Wilson*, 196 S.W.3d at 779. Thus, the FAA preempts the TAA only if (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects the enforceability of the agreement. *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005). Therefore, it is possible for an appellate court to have jurisdiction under both acts. *See Wilson*, 196 S.W.3d at 779.

In this case, the arbitration provision relied upon by the Bank does not specifically invoke either the FAA or the TAA, and the trial court did not specify which act applies. The Bank invoked both the FAA and the TAA in the trial court, and seeks relief under both acts in this court. The Bryce Plaintiffs do not dispute that both acts apply.

The FAA governs an arbitration provision contained in a "contract evidencing a transaction

---

[5] We consolidate the two cases for purposes of this opinion and consider them together. *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916-17 (Tex. 1998).

4

involving commerce." *Tipps*, 842 S.W.2d at 269-70; *see also* 9 U.S.C. § 2. A contract "evidenc[es] a transaction involving commerce" if it in fact turns out to involve interstate commerce. ***Allied-Bruce Terminix Cos. v. Dobson***, 513 U.S. 265, 277, 115 S. Ct. 834, 841, 130 L. Ed. 2d 753 (1995). The assets transferred to Bryce Interests by Velma and the Bank, as trustee of the marital trust, included the Fredonia stock and other securities. The Bank, as agent and attorney in fact for Bryce Interests under the terms of the investment account agreement, traded the Fredonia stock, as well as some of the other transferred securities, on national exchanges such as NASDAQ and the New York Stock Exchange.[6] These trades involved interstate commerce. *See, e.g.,* ***Wachovia Securities LLC v. Emery***, 186 S.W.3d 107, 112 (Tex. App.–Houston [1st Dist.] 2005, no pet.). Thus, the Bryce Interests partnership agreement "turn[ed] out to involve interstate commerce," and as such, "evidenc[es] a transaction involving interstate commerce." Therefore, the arbitration provision falls within the bounds of the FAA. *See* 9 U.S.C. § 2; ***Dobson***, 513 U.S. at 277, 115 S. Ct. at 841.

Moreover, the partnership agreement provides that it "shall be construed and enforced according to the laws of the State of Texas and the courts of that state, except as may otherwise be required by the laws of any other jurisdiction." Generic language such as this invokes both federal and state law. *See* ***Wilson***, 196 S.W.3d at 778-79 (holding that both FAA and TAA applied where contracts stated they "shall be governed by the law of the place where the Project is located"); ***In re L & L Kempwood Assocs., L.P.***, 9 S.W.3d 125, 127-28 (Tex. 1999) (same); *see also* ***Provision Interactive Techs., Inc. v. Betacorp Mgmt., Inc.***, No. 03-06-00692-CV, 2008 WL 536688, at * 3 (Tex. App.–Austin Feb. 28, 2008, no pet.) (mem. op.) (holding that agreement "to employ Arbitration organized under the statutes or the Courts of the States in which the complaining party is domiciled" invokes both FAA and TAA). It is uncontroverted that the agreement is in writing and involves interstate commerce, but neither party asserts that the agreement cannot withstand scrutiny under traditional contract defenses or that state law affects its enforceability. *See* ***Nexion Health***, 173 S.W.3d at 69. Consequently, the FAA does not preempt the TAA, and we have jurisdiction under both acts.

---

[6] The partnership agreement authorizes the general partner of Bryce Interests to "buy, sell and otherwise deal with securities of any type. . . ." This authority could be delegated under the terms of the agreement.

The Bryce Plaintiffs contend that the Bank waived its right to compel arbitration, and therefore the trial court did not abuse its discretion by denying the Bank's motion to compel.[7] The Bank counters that the Bryce Plaintiffs did not prove waiver.

## Difficulty of Establishing Waiver

The standard for determining waiver of the right to arbitration is the same under both the FAA and the TAA. ***Brown v. Anderson***, 102 S.W.3d 245, 250 (Tex. App.–Beaumont 2003, pet. denied). Whether a party has waived its right to arbitration is a question of law. ***In re Fleetwood Homes of Texas, L.P.***, 257 S.W.3d 692, 694 (Tex. 2008). We review questions of law de novo, giving no deference to the trial court's ruling. *See **Perry Homes v. Cull***, 258 S.W.3d 580, 598 (Tex. 2008). A trial court abuses its discretion if it erroneously determines a question of law.[8] ***Perry Homes***, 258 S.W.3d at 598 n.102. When an agreement to arbitrate is enforceable under the FAA, there is a strong presumption in favor of arbitration. ***In re Poly-America, L.P.*** 262 S.W.3d 337, 348 (Tex. 2008). As a corollary to this, there is also a strong presumption against waiver. ***In re Bank One, N.A.***, 216 S.W.3d 825, 827 (Tex. 2007). Although the presumption against waiver is not irrebuttable, ***Perry Homes***, 258 S.W.3d at 584, a party asserting waiver bears a heavy burden of proof. ***Walker v. J.C. Bradford & Co.***, 938 F.2d 575, 577 (5th Cir. 1991); ***EZ Pawn Corp. v. Mancias***, 934 S.W.2d 87, 90 (Tex. 1996). Any doubts regarding waiver are resolved in favor of arbitration. ***Walker***, 938 F.2d at 577; ***Poly-America***, 262 S.W.3d at 348.

## Waiver by Litigation Conduct

A party implicitly waives its arbitration rights when it substantially invokes the judicial process to the other party's detriment or prejudice. *See **Perry Homes***, 258 S.W.3d at 589-90. How

---

[7] The Bryce Plaintiffs also contend that the Bank could not compel arbitration because it was not a party to the partnership agreement in the capacity in which it was sued, and that even if it were, the Bryce Plaintiffs' claims do not relate to the agreement. Because the Bryce Plaintiffs' waiver argument is dispositive, we need not address their other arguments. *See* Tex. R. App. P. 47.1.

[8] Generally, to be entitled to mandamus, a relator must show there has been a clear abuse of discretion by the trial court for which there is no adequate remedy by appeal. ***In re Prudential Ins. Co. of Am.***, 148 S.W.3d 124, 135-36 (Tex. 2004); ***Walker v. Packer***, 827 S.W.2d 833, 839 (Tex. 1992). If a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no adequate remedy at law. ***Wilson***, 196 S.W.3d at 780-81. In that instance, we address only whether the trial court abused its discretion in denying the motion.

much litigation conduct will be "substantial" depends on the context. *Id.* at 593. As it applies to waiver, "prejudice" relates to inherent unfairness—a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage. *Id.* at 597. Stated another way, "prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* The precise question is not so much when waiver occurs as when a party can no longer take it back. *Id.* at 594. "[W]here a party fails to demand arbitration . . . , and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Perry Homes*, 259 S.W.3d at 600 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004).

Parties that "conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial" waive any contractual right to arbitration. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006). But the Texas Supreme Court has recognized that sometimes only two out of these three requirements are met, and how much discovery is "full discovery" depends on the context. *See Perry Homes*, 258 S.W.3d at 590, 593. Consequently, it has adopted the federal rule that waiver is to be decided case by case based on the totality of the circumstances. *Id.* at 591. Further, the court has enumerated the following factors that are germane when assessing the totality of the circumstances: (1) whether the movant was the plaintiff, who chose to file in court, or the defendant, who merely responded; (2) how long the movant delayed before seeking arbitration; (3) when the movant knew of the arbitration clause; (4) whether the movant sought or opposed arbitration earlier in the case; (5) how much time and expense had been incurred in litigation; (6) whether activity in court would be duplicated in arbitration; (7) whether the movant filed affirmative claims or dispositive motions or sought judgment on the merits; (8) how much discovery had been conducted and who initiated it; (9) how much of the discovery would be useful in arbitration; and (10) how much pretrial activity related to the merits, rather than arbitrability or jurisdiction. *See id.* at 591-92.

**The Totality of the Circumstances**

The pertinent inquiry in this case is whether the totality of the circumstances shows that the Bank invoked the judicial process to such a degree that its actions resulted in prejudice or detriment to the Bryce Plaintiffs. *See **Perry Homes***, 258 S.W.3d at 589-90.  The Bank argues that the Bryce Plaintiffs have not established either element of waiver.

1. *Substantial Invocation of the Judicial Process*.  According to the court's file, of which it took judicial notice, the Bryce Plaintiffs sued the Bank and other defendants on May 19, 2005. Although the Bryce Plaintiffs produced a copy of the partnership agreement to the Bank in November 2005, the record does not show when the Bank actually became aware of the arbitration provision.  But it does show that until the Bank filed its motion to compel arbitration on January 12, 2007, approximately twenty months after suit was filed, the parties conducted discovery.  During this period, the Bank

- served one request for disclosure;

- served each of the Bryce Plaintiffs with one request for production requesting 25 to 28 categories of documents, and served the Bryce Plaintiffs collectively with two additional requests for production requesting 15 categories of documents;

- served each of the Bryce Plaintiffs with one set of interrogatories, and served the Bryce Plaintiffs collectively with two additional sets of interrogatories;

- served one request for admissions;

- filed three motions to compel responses or more specific responses to written discovery;

- took thirteen oral depositions and two depositions on written questions, some of which included a subpoena duces tecum; and

- sent a deposition notice and subpoena duces tecum to Velma's physician, which was quashed after a hearing.

The Bank's discovery relates to all aspects of the merits; none of it relates to arbitrability or jurisdiction.  The sheer volume of documents and other information requested does not reach the level described in ***Perry Homes***, but the discovery is nonetheless extensive.  In fact, the Bank filed a motion for partial summary judgment, subject to its motion to compel arbitration, that encompassed all of the Bryce Plaintiffs' claims except the general claims of mismanagement—those unrelated to the Bank's failure to timely sell all or a large portion of the Fredonia stock and reinvest

the proceeds. By its own characterization, the Bank's motion covered "most of [the Bryce Plaintiffs'] claims." Therefore, it appears that most of the Bank's discovery was complete at the time it filed its motion to compel arbitration.

In addition to the discovery noted above, the Bank

- sought and obtained an order to preserve electronic files in the possession of the Bryce Plaintiffs covering the period of time relevant to the suit;

- filed a motion for leave to designate responsible third parties;

- filed a motion to strike the Bryce Plaintiffs' expert witness designation for failure to comply with the deadline in the scheduling order, or alternatively, to extend the time for filing the Bank's expert witness designations;

- designated its expert witnesses and provided the Bryce Plaintiffs a report from each;

- filed an objection to the Bryce Plaintiffs' request for a protective order to limit the distribution of information available from the Office of the Comptroller of the Currency (OCC);

- filed a motion for in camera inspection of the OCC information to address its claims of privilege; and

- filed a motion and a supporting brief requesting reconsideration of the trial court's order requiring production of the information obtained from the OCC.

Based upon the extent of the discovery conducted and this additional activity, the trial court properly concluded that the Bank had substantially invoked the judicial process. *See id.* at 595-96 (holding litigation process substantially invoked where movant conducted extensive discovery about every aspect of the merits).

The Bank disagrees pointing out that it was a defendant, not a plaintiff, in the underlying cause; that it did not oppose arbitration earlier in the case; and that it did not file affirmative claims or dispositive motions other than a motion for partial summary judgment, which was filed subject to its motion to compel arbitration. These factors weigh in favor of the Bank, but they are not determinative. A totality of the circumstances test presumes a multitude of potential factors and a balancing of evidence on either side. *Id*. at 598. A trial court's ruling does not constitute an abuse of discretion merely because some factors weigh in favor of the movant. *See id.* The Bank further states that it "can be accused only of participating in normal litigation activity[.]" But the fact that the Bank's activity was "normal" does not preclude it from being "substantial."

9

2. *Prejudice.* According to a docket notation, on October 30, 2006, the trial court signed a revised scheduling order setting a trial date of March 16, 2007. The Bank's motion to compel arbitration was filed approximately eight weeks before trial, after most of its discovery was complete. Under the standard enunciated in **Perry Homes**, this motion was filed on "the eve of trial."[9]

At the hearing on the motion to compel arbitration, the Bryce Plaintiffs' counsel informed the trial court that it had been prejudiced by the Bank's litigation conduct because of the resulting delay and expense and because the only defendants they had not yet deposed were the bank officers. Their counsel said the deposition of one officer had been requested four times, but had been refused. Later, counsel said that the Bryce Plaintiffs had requested depositions from "the CNB's witnesses, and we've been denied that so far. We hope to be able to get that, but so far, they've taken all of this other discovery that they wanted, and now when we're ready to go forward, now they say, 'Wait a minute. Sorry. Arbitration.'" The Bank responded that the Bryce Plaintiffs "only requested those depositions recently, and [one of the officers] had a major surgery. . . ." The Bryce Plaintiffs' counsel introduced no evidence regarding these events. Therefore, we cannot determine from the record when the Bryce Plaintiffs first requested that the bank officers be made available, how many times the depositions were requested, or specifically how the Bank responded to each request.

The Bank's counsel assured the trial court that when they went to arbitration, it would give the Bryce Plaintiffs "all the depositions they want," and that the American Arbitration Association (AAA) always allows depositions in large cases, particularly if the parties agree. Counsel further represented that the arbitration will be governed by the AAA Commercial Arbitration Rules, Large Complex Commercial Disputes, which establish that discovery, document productions, fact depositions, and expert depositions would be allowed in arbitration.

In this court, the Bank urges that the Bryce Plaintiffs' assertion of prejudice at the hearing was insufficient because it included only argument of counsel, but no evidence. More particularly, the Bank first points out that the Bryce Plaintiffs did not introduce any evidence of the work done,

---

[9] Perry Homes requested a ten week continuance to finish deposing experts. Because the trial court ordered arbitration, no one knew whether the case would have gone to trial as scheduled. But the court cautioned that "[t]he rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before; it is a rule of proportion that is implicated here." *See Perry Homes*, 258 S.W.3d at 596.

10

time spent, or expenses incurred in responding to the discovery requests that could have been avoided if the Bank had requested arbitration earlier. The dissent in *Perry Homes* raised a similar concern, but the majority distinguished proof of the *fact* of prejudice from proof of its *extent* and held that only proof of the *fact* of prejudice was required. *Id.* at 599. Next, the Bank argues that, through the affidavit of its counsel admitted into evidence at the hearing, it proved the discovery taken in the case would be useful in arbitration. This is a factor to be considered and weighs in favor of the Bank. However, it is not the sole consideration. *See id.* at 591-92.

Finally, the Bank contends that it proved, through its counsel's affidavit without objection or controverting evidence, that (1) the discovery taken would have been allowed in arbitration, (2) the Bank would have sought and obtained the same discovery in arbitration, and (3) the Bank has not received in discovery any documents or information that it could not have received in arbitration. Counsel states in his affidavit that the American Arbitration Association (AAA) would "most likely" (1) apply the AAA's Commercial Arbitration Rules and Mediation Procedures, including Procedures for Large, Complex Commercial Disputes, in any arbitration of this case; (2) allow the parties to take oral depositions, propound interrogatories, and request documents; and (3) require expert witness reports, followed by depositions of the experts. He further states that the Bank (1) would have sought and obtained the same discovery to date if the Bryce Plaintiffs had originally filed the case with the AAA; (2) would seek and obtain the same additional discovery regardless of where the case is pending; and (3) in connection with the designation of expert witnesses, has not received any information that it would not have received if the Bryce Plaintiffs had originally filed the case with the AAA.

As the court noted in *Perry Homes*, proving what discovery an arbitrator would have allowed is impossible. *Id.* at 599. "[A]rbitrators have almost unbridled discretion regarding discovery, so no one can predict what they might do in advance. Presuming. . . that broad discovery is generally available in arbitration simply ignores one of its most distinctive features." *Id.* The Bank maintains that what an arbitrator would do here is more certain because the arbitration will be governed by the rules for large, complex commercial disputes. In perusing those rules, a copy of which is attached to counsel's affidavit, we find no such assurance. Rule L-4, entitled "Management of Proceedings," provides in part that

11

(a) Arbitrator(s) shall take such steps as they may deem necessary or desirable to avoid delay and achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.

. . . .

(c) The parties may conduct such discovery as may be agreed to by all the parties provided, however, that the arbitrator(s) may place such limitations on the conduct of such discovery as the arbitrator(s) shall deem appropriate. If the parties cannot agree on production of documents and other information, the arbitrator(s), consistent with the expedited nature of arbitration, may establish the extent of the discovery.

American Arbitration Association Commercial Arbitration Rules and Mediation Procedures (including Procedures for Large, Complex Commercial Disputes) (eff. Sept. 1, 2007), *available at* http://www.adr.org/sp.asp?id=22440#L4. Thus, in the area of discovery, an arbitrator has broad discretion in large, complex commercial cases as well. In light of this discretion and the court's observations in **Perry Homes** about the unpredictability of discovery in arbitration, counsel's statements about what discovery will be or would have been allowed in arbitration do not amount to conclusive proof.

We further note that the Bank took its final deposition (of those included in the record) on November 27, 2006. The Bryce Plaintiffs then took two depositions, on December 7, 2006 and January 3, 2007, respectively. The Bank filed its motion to compel arbitration on January 12. The Bank admits that prior to the hearing on the motion to compel arbitration, it offered to "present the Bank's witnesses for deposition in return for the simple agreement that Plaintiffs would not claim that those depositions themselves were evidence of arbitration waiver."[10] The making of this offer suggests, contrary to its contention here, that the Bank believed the opportunity to take these depositions under the rules of civil procedure and prior to arbitration was valuable to the Bryce Plaintiffs.

In sum, the record shows that, for twenty months, the Bank got extensive discovery under one set of rules and then sought to arbitrate under another. When trial was imminent (approximately two months away), it delayed disposition by attempting to switch to arbitration. Finally, the Bank agreed the Bryce Plaintiffs could take their remaining depositions prior to arbitration, only if they

---

[10] The Bryce Plaintiffs refused the offer.

agreed to forego any claim that allowing those depositions showed the Bank had waived arbitration. Under *Perry Homes*, the trial court properly interpreted the Bank's actions as manipulation of the litigation for its advantage and the Bryce Plaintiffs' detriment.

## CONCLUSION

The trial court properly concluded that the Bank invoked the judicial process to such a degree that its actions resulted in prejudice or detriment to the Bryce Plaintiffs. Therefore, it did not abuse its discretion in denying the Bank's motion to compel arbitration. Accordingly, the Bank's petition for writ of mandamus is *denied*, and the trial court's order denying the Bank's motion to compel arbitration is *affirmed*. All pending motions are overruled as moot, and our stay of the underlying proceeding is lifted.

**BRIAN HOYLE**
Justice

Opinion delivered November 5, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

13