# NO. 12-10-00108-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:  ASTRO AIR, L.P.,* | § | |
| *RELATOR* | § | *ORIGINAL PROCEEDING* |
| | § | |

## *MEMORANDUM OPINION*

By petition for writ of mandamus, Astro Air, L.P. challenges the trial court's order denying its motion to abate the underlying proceeding and compel arbitration.[1]  The real party in interest is Sharron Hall.  We deny the petition.

## BACKGROUND

Hall was hired by Astro in December 2005.  She worked for Astro until she was injured on the job in July 2007.  Because she believed that her injury was caused by Astro's negligence, Hall sued Astro.  Shortly thereafter, Astro filed a motion to abate the underlying proceeding and compel arbitration.

In its motion, Astro argued that the claims Hall asserted were covered claims under an arbitration agreement between Hall and Astro.  However, Astro failed to present an arbitration agreement signed by Hall.  Instead, Astro presented an affidavit and deposition testimony from Lora Griffith Western, Astro's human resources manager at the time of Hall's hiring.  According to Western, Astro was a nonsubscriber to workers' compensation insurance at the time Hall was hired.  Consequently, Astro's routine practice was to explain to any new employee that it was a nonsubscriber and that it had an ERISA compliant injury benefit plan that included an arbitration agreement.  To

---

[1] The respondent is the Honorable Dwight Phifer, Judge of the 2nd Judicial District Court, Cherokee County, Texas.

memorialize these conversations, Astro required the signature of the new employee on several documents, including an arbitration agreement, before the new employee began work. Based upon this information, Astro argued that Hall must have been notified of and signed an arbitration agreement because she worked for Astro. Further, Astro contended that its routine practice provides evidence that Hall and Astro entered into an arbitration agreement.

Astro admitted that another of its routine practices was to keep the documents discussed with a new employee, including the signed arbitration agreement, in the employee's personnel file. However, Astro was acquired by Luvata Grenada, L.L.C., in August 2007. Although Astro sent personnel files to Luvata Grenada, the contents of Hall's personnel file have not been located.

In response to Astro's motion to compel arbitration, Hall stated by affidavit that she did not recall being informed of an arbitration agreement, agreeing to be bound by an arbitration agreement, or signing an arbitration agreement. She did remember being told that Astro did not participate in workers' compensation.

After hearing argument and reviewing the affidavits and deposition testimony, the trial court denied Astro's motion. Astro then filed its petition for writ of mandamus.

## AVAILABILITY OF MANDAMUS

Ordinarily, mandamus will issue to correct a clear abuse of discretion where there is no adequate remedy by appeal. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). With respect to the resolution of factual matters or matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker*, 827 S.W.2d at 839. In such matters, the relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Consequently, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* The party seeking the writ of mandamus has the burden of showing that the trial court abused its discretion. *In re E. Tex.*

2

*Med. Ctr. Athens*, 154 S.W.3d 933, 935 (Tex. App.—Tyler 2005, orig. proceeding).

In drafting an arbitration provision, parties are free to specify which arbitration act governs their agreement to arbitrate. *Citizens Nat'l Bank v. Bryce*, 271 S.W.3d 347, 353 (Tex. App.—Tyler 2008, orig. proceeding [mand. denied]) (combined interlocutory appeal and original proceeding) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477-79, 109 S. Ct. 1248, 1254-56, 103 L. Ed. 2d 488 (1989)). When the Federal Arbitration Act (the "FAA") applies, and a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no other adequate remedy at law and is entitled to a writ of mandamus. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). Here, Astro seeks to enforce an arbitration agreement that specifically states, "The FAA governs all aspects of this agreement." Thus, mandamus is the proper avenue for Astro to challenge the trial court's denial of its motion to compel arbitration. We therefore focus our inquiry on whether the trial court abused its discretion in denying the motion.

## THE ARBITRATION AGREEMENT

Astro argues that Hall executed a copy of the arbitration agreement and that it presented "overwhelming evidence" establishing its routine practice of providing all new employees with a copy of the agreement. According to Astro, its evidence of routine practice is admissible to establish that it provided notice of the arbitration agreement to Hall. Therefore, Astro concludes, the arbitration agreement is valid, and Hall is bound to arbitrate her claims against Astro, because Hall either signed the agreement or at least received notice of the agreement. On the other hand, Hall argues that Astro did not establish that Hall signed the arbitration agreement and that Astro's proof did not conclusively refute any of the statements in Hall's affidavit. Hall further contends that she is entitled to a spoliation inference because relevant evidence—her personnel file—was lost while in Astro's possession.

### Contract Law

Arbitration agreements are valid, irrevocable, and enforceable to the same extent as any other contract. 9 U.S.C.A. § 2 (West 1999). Thus, an arbitration agreement is valid if it satisfies the general contract law requirements of the applicable state. *In re Poly-America, L.P.*, 262 S.W.3d 337, 347 (Tex. 2008) (orig. proceeding). Therefore, we must first determine whether the arbitration agreement in this case satisfies Texas law governing contract formation. *See id*; *see also In re Morgan Stanley & Co.*,

3

293 S.W.3d 182, 187 (Tex. 2009) (orig. proceeding) (courts have authority and responsibility to determine existence of contract containing relevant arbitration agreement). Arbitration agreements are treated the same as any other contract. *In re Poly-America, L.P.*, 262 S.W.3d at 347. Once an enforceable arbitration agreement is found, the strong federal presumption in favor of arbitration requires doubts not relating to enforceability to be resolved in favor of arbitration. *Id.* at 348. But the initial determination of whether an enforceable agreement exists is determined through the neutral application of contract law. *Id*.

The elements necessary to form a binding contract are (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) a communication that each party consented to the terms of the contract, (5) execution and delivery with the intent that it become mutual and binding, and (6) consideration. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Whether an agreement was reached is a question of fact. *Id*. Additionally, in the employment context, a party asserting a change to an at will employment contract must prove that the other party received notice of the change and accepted the change. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (orig. proceeding). To prove notice, an employer asserting a change must prove that it unequivocally notified the employee of a definite change in employment terms. *Id*. When an employer so notifies an employee and the employee continues working with knowledge of the change, the employee has accepted the change as a matter of law. *Id*.

Unless disputed issues of fact require a full evidentiary hearing, a trial court should decide a motion to compel arbitration summarily. *In re Poly America, L.P.*, 262 S.W.3d at 354. Ordinarily, the hearing at which a motion to compel arbitration is decided involves application of the arbitration agreement terms to undisputed facts, amenable to proof by affidavit. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding). Therefore, the trial court generally decides whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. *Id*. If the facts are disputed, the trial court must conduct an evidentiary hearing to determine the disputed facts. *Id*.

**Routine Practice and Spoliation Evidence**

Evidence of the routine practice of an organization is relevant to prove that the organization acted in conformity with its routine practice on a particular occasion. TEX. R. EVID. 406. Thus, a party's routine response to a repeated, specific situation is admissible. *Pacesetter Corp. v. Barrickman*,

885 S.W.2d 256, 263 (Tex. App.—Tyler 1994, no writ). However, the routine practice of an organization does not conclusively establish the fact sought to be proved. *See In re Advance EMS Servs.*, No. 13-06-00661-CV, 2009 Tex. App. LEXIS 1134, at *9-10 (Tex. App.—Corpus Christi Feb. 12, 2009, orig. proceeding) (mem. op.) (employer's representative testified employees not allowed to begin work until they signed acknowledgment of arbitration agreement; trial court could properly conclude no valid arbitration agreement where representative did not provide direct and unequivocal testimony and lacked personal knowledge of pertinent revisions).

Spoliation is the improper destruction of evidence relevant to a case. *Adkison v. Adkison*, No. 12-06-00077-CV, 2007 WL 259550, at *3 (Tex. App.—Tyler Jan. 31, 2007, no pet.) (mem. op).

> Evidence spoliation is not a new concept. For years courts have struggled with the problem and devised possible solutions. Probably the earliest and most enduring solution was the spoliation inference or *omnia praesumuntur contra spoliatorem*: all things are presumed against a wrongdoer. In other words, within the context of the original lawsuit, the factfinder deduces guilt from the destruction of presumably incriminating evidence.

*Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex. 1998) (internal citations omitted). This traditional response to the problem of evidence spoliation properly frames the alleged wrong as an evidentiary concept, not a separate cause of action. *Id.* "[W]hen spoliation occurs, there must be adequate measures to ensure that it does not improperly impair a litigant's rights . . . ." *Id.* at 953. It is simple, practical, and logical to rectify any improper conduct within the context of the lawsuit in which it is relevant. *Id.*

The loss or destruction of evidence may seriously impair a party's ability to present its case. *Tex. Electric Co-op. v. Dillard*, 171 S.W.3d 201, 208 (Tex. App.—Tyler 2005, no pet.) (citing *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003)). The trial court enjoys discretion to fashion an appropriate remedy to restore the parties to "a rough approximation of their positions if all evidence were available." *See Johnson*, 106 S.W.3d at 721.

> Because parties have a duty to reasonably preserve evidence, it is only logical that they should be held accountable for either negligent or intentional spoliation. While allowing a court to hold a party accountable for negligent as well as intentional spoliation may appear inconsistent with the punitive purpose of remedying spoliation, it is clearly consistent with the evidentiary rationale supporting it because the remedies ameliorate the prejudicial effects resulting from the unavailability of evidence. In essence, it places the burden of the prejudicial effects upon the culpable spoliating party rather than the innocent nonspoliating party.

5

*See* ***Trevino***, 969 S.W.2d at 957 (Baker, J., concurring) (internal citations omitted).

**Application**

Here, Astro provided admissible routine practice evidence that it had entered into a binding arbitration agreement with Hall. *See* TEX. R. EVID. 406. The evidence was not only admissible, but also strong and persuasive that Hall was notified of the arbitration agreement and that she signed the arbitration agreement. But Astro's proof was not conclusive.

Astro was unable to provide the trial court with an arbitration agreement signed by Hall. The deposition testimony of Lora Griffith Western, Astro's human resources manager at the time of Hall's hiring, demonstrated that Western believed Hall was notified of and signed the acknowledgement of the arbitration agreement, but she was not certain. In fact, Western stated that she could not be certain without seeing the contents of Hall's personnel file. Also, Hall controverts Astro's proof to some extent by stating in her affidavit that she could not recall signing or being presented with an arbitration agreement. Hall admitted that Astro explained it did not participate in workers' compensation, but this evidence does not conclusively establish that Hall was notified of an arbitration agreement or that she signed such an agreement.

Hall also asserts that the spoliation inference should inure to her benefit because her personnel file, including any arbitration agreement that may have been in the file, was in Astro's possession, and Astro negligently lost the contents of the personnel file. The contents of the personnel file are critical evidence in this case because a signed copy of an arbitration agreement would conclusively demonstrate that Hall and Astro had an agreement to arbitrate. An unsigned copy or no copy at all would be strong evidence that Astro's routine procedure was not followed in this case and thus, evidence that Hall was not presented with an arbitration agreement or required to sign an arbitration agreement before beginning work.

We agree with Hall that Astro's evidence in this case is not conclusive. Astro's evidence of its routine practice is sufficient to allow the trial court to find that an arbitration agreement existed between Astro and Hall. However, Astro's burden is heavier than that. Although Astro presented strong evidence of its routine practice, we cannot say that the trial court could reasonably have reached but one decision about the existence of an agreement to arbitrate. *See* ***Walker***, 827 S.W.2d at 839. Therefore, the trial court did not abuse its discretion in denying Astro's motion to compel arbitration.

## DISPOSITION

Because Astro has not shown an abuse of discretion by the trial court, we ***deny*** its petition for writ of mandamus.

**BRIAN HOYLE**
Justice

Opinion delivered September 15, 2010.
*Panel consisted Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7