

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DHARA GAYLE HOGG, | § | |
| Appellant, | § | No. 08-14-00187-CV |
| | § | Appeal from the |
| v. | § | 143rd District Court |
| | § | of Ward County, Texas |
| LYNCH, CHAPPELL & ALSUP, P.C., | § | |
| Appellee. | § | (TC# 14-03-23274-CVW) |
| | § | |

## **O P I N I O N**

Dhara Gayle Hogg and the law firm of Lynch, Chappell & Alsup, P.C. (LCA) entered into a contingent fee agreement, in which LCA agreed to represent Ms. Hogg in an estate proceeding. A dispute arose between Ms. Hogg and LCA regarding the validity of the agreement. After litigation ensued in both county court and district court over this issue, Ms. Hogg filed a motion to compel arbitration. LCA opposed the motion, claiming that Ms. Hogg had waived her right to seek arbitration by substantially invoking the judicial process to LCA's detriment. The district court agreed with LCA, and denied Ms. Hogg's motion. We affirm.

### **THE STATE OF THE RECORD**

Before providing the factual background of this case, it is necessary to address the state of the appellate record. Ms. Hogg contends, and we agree, that LCA has cited facts in its brief that

are not supported by documents contained in the record on appeal. With limited exceptions not material here, an appellate court may not consider matters outside the appellate record. *Siefkas v. Siefkas,* 902 S.W.2d 72, 74 (Tex.App. – El Paso 1995, no writ) (citing *Sabine Offshore Service v. City of Port Arthur,* 595 S.W.2d 840, 841 (Tex. 1979)); *see In re M.S.,* 115 S.W.3d 534, 546 (Tex. 2003) ("this Court – or any appellate court – may only consider the record presented to it"). To the extent LCA has made references to facts that do not appear in the appellate record, we will not consider those facts in our analysis.

LCA has also attached to its brief a copy of the reporter's record of a May 16, 2014 hearing that was never formally made a part of the appellate record. Documents attached to a brief as an exhibit or appendix, but not appearing in the appellate record, cannot be considered on appellate review. *Warriner v. Warriner,* 394 S.W.3d 240, 254 (Tex.App. – El Paso 2012, no pet.); *see Robb v. Horizon Communities Improvement Ass'n, Inc.,* 417 S.W.3d 585, 589 (Tex.App. – El Paso 2013, no pet.) (attaching documents to a brief does not constitute formal inclusion in the record on appeal, and those documents cannot be considered by the reviewing court). Even when a party asserts that the attached documents were filed with the trial court, if the documents were not properly included in the appellate record, we are unable to consider them in our review. *Perry v. Kroger Stores Store No. 119,* 741 S.W.2d 533, 534-35 (Tex.App. – Dallas 1987, no writ) (refusing to consider affidavit attached to brief that was not included in the record of the case on appeal despite party's assertion that it was filed along with her motion for summary judgment); *Siefkas,* 902 S.W.2d at 74 (although party alleged that the documents he attached to his brief were relevant court orders filed in the case, this Court granted opposing party's request to strike the documents because they had not been made a part of the appellate record). Accordingly, we decline to

consider the attached reporter's record in our review.

Also, we note that the supplemental clerk's record in this appeal contains a copy of a motion for summary judgment and supporting exhibits, which LCA filed *after* the trial court issued its ruling on Ms. Hogg's motion to compel arbitration. Our review is limited to the record that was before the trial court at the time it rendered its decision. *In re Bristol–Myers Squibb Co.,* 975 S.W.2d 601, 605 (Tex. 1998) (appellate court must "focus on the record that was before the court" when it rendered its decision); *In re Allstate Ins. Co.,* 232 S.W.3d 340, 343 (Tex.App. – Tyler 2007, no pet.); *McMahan v. Greenwood,* 108 S.W.3d 467, 500 (Tex.App. – Houston [14th Dist.] 2003, pet. denied). Although LCA's motion for summary judgment contains several exhibits, including discovery materials and affidavits from LCA attorneys, that could be relevant to whether Ms. Hogg waived her right to arbitration, we decline to consider those exhibits in our analysis to the extent they were not before the trial court when it heard and denied Ms. Hogg's motion to compel arbitration. *See Perry Homes v. Cull,* 258 S.W.3d 580, 596 n.89 (Tex. 2008) ("[b]ecause we limit our review to the record before the trial judge, we do not consider the Defendants' additional seven volumes of discovery exhibits filed after the arbitration award" in determining whether defendant waived her right to arbitration).

With these understandings in mind, we turn to the background of this appeal as reflected in the appellate record.[1]

**BACKGROUND**

Ms. Hogg's husband, George Hogg, passed away in April 2013 without a will, leaving behind approximately $10 million in assets, including real estate with oil and gas production,

---

[1] We do note, however, that, other than the dispute over the extent of discovery conducted before Ms. Hogg filed her motion to compel arbitration, the procedural and background facts in the case are essentially undisputed.

3

cattle, cash, and a stock brokerage account. Ms. Hogg and George Hogg's brother, Mark Hogg, were George Hogg's only heirs. Mark Hogg initially moved to be named as independent administrator of George Hogg's estate in the County Court of Ward County. Wishing to contest the appointment, Ms. Hogg retained LCA to represent her in the estate proceedings.

When she first retained LCA, Ms. Hogg signed an agreement to pay LCA on an hourly basis. However, shortly thereafter, she and LCA entered into a contingent fee agreement, in which LCA agreed to represent Ms. Hogg in exchange for a 25 percent interest in all of the assets received by Ms. Hogg as an heir of the estate. The contingent fee agreement made reference to the prior hourly agreement, noting that Ms. Hogg had requested the change and that the parties had agreed to change the fee structure because they were previously unaware of the "complexity of issues that were to be undertaken by Attorneys."

LCA subsequently represented Ms. Hogg during a mediation session in an attempt to resolve the contested issues relating to the estate property. As a result of the mediation, the parties signed a mediated settlement agreement (MSA) on December 2, 2013, which divided the estate assets between Ms. Hogg and Mark Hogg. Two provisions in the MSA called for estate assets "to be paid to [Ms. Hogg] and her attorneys[,]" including assets from the sale of the surface and mineral rights in various ranches and assets from George's brokerage account. The MSA itself did not specifically reference the contingent fee agreement, did not specify that LCA was entitled to receive any particular portion of the proceeds, and did not expressly give LCA any proprietary interest in the proceeds.[2] The MSA required Ms. Hogg and Mark Hogg to execute

_____

[2] While the MSA appears in the appellate record only as an attachment to LCA's motion for summary judgment, at the hearing on her motion to compel arbitration, Ms. Hogg's attorney referenced that the MSA was in the court's file. Because the district court properly took judicial notice of the contents of its files at the hearing, we will consider the MSA as part of the appellate record.

4

various special warranty deeds to convey their respective property interests to each other on or before December 31, 2013. One of the warranty deeds stated that Mark Hogg was assigning one-half of certain mineral, royalty and leasehold interests to Ms. Hogg, and further indicated that LCA was to receive 25 percent of the assignment pursuant to its "separate agreement" with Ms. Hogg, entitling it to 25 percent of Ms. Hogg's interest in this asset.

After the parties agreed to reset the estate closing to January 27, 2014, LCA informed Ms. Hogg that LCA intended to take its 25 percent contingency fee at the time of the closing pursuant to the terms of the contingent fee agreement. In response, Ms. Hogg asked LCA whether it would consider taking less than a 25 percent fee, but LCA declined to do so. Shortly thereafter, on January 15, 2014, Ms. Hogg advised LCA that she was terminating its services and had retained new counsel to represent her.

Ms. Hogg failed to attend the estate closing, and Mark Hogg filed a petition to enforce the mediated settlement agreement in the Ward County Court. On or about February 12, 2014, Ms. Hogg filed an answer to the petition. In her answer to the petition, Ms. Hogg stated that she was willing to abide by the terms of the MSA, with the exception of those portions of the MSA "purporting to convey a proprietary interest in estate assets to [LCA]," alleging that those portions of the agreement were "unconscionable, void and unenforceable." In particular, Ms. Hogg claimed that the contingent fee agreement, which she acknowledged signing, was "induced by misrepresentations of fact and law, fraud and the failure to adequately disclose matters of fact and law." In her request for relief, Ms. Hogg asked that the county court's final judgment "delet[e] any proprietary interests or reference to the law firm of Lynch, Chappell and Alsup[,]" but that the court enforce all of the remaining provisions in the MSA. Ms. Hogg also asked for "such other

5

relief in law or equity to which Respondent Defendant may show herself entitled to receive[,]" and demanded a jury trial.

On February 14, 2014, LCA intervened in the county court suit, seeking, among other things, a ruling that it was entitled to its 25 percent share of the estate assets as attorney's fees under the parties' contingent fee agreement. In addition, LCA asked the county court to transfer the attorney fee dispute to the district court, asserting that this portion of the estate case had become contested by virtue of Ms. Hogg's pleadings. On February 18, 2014, the county court granted LCA's petition in intervention, and transferred the portion of the case involving the fee dispute to the 143rd Judicial District Court in Ward County.

On February 24, 2014, following a hearing in county court, the parties signed a Rule 11 Agreement that allowed the estate closing to go forward in accordance with the terms of the MSA, but which called for the "cash claimed by LCA," including its 25 percent interest in the estate assets awarded to Ms. Hogg, to be deposited into the registry of the county court. The Rule 11 Agreement, which was filed in the county court, further stated that: "Such cash shall be distributed to the appropriate party upon the entry of a judgment of the District Court of Ward County, Texas or upon presentment of a settlement agreement signed by the parties."[3]

Shortly thereafter, on March 7, 2014, LCA filed a lawsuit against Ms. Hogg in the district court, claiming that Ms. Hogg had breached her contract with LCA. LCA sought, among other things, the disputed $1.2 million in attorney's fees.

Ms. Hogg filed an answer in the district court to LCA's lawsuit in which she raised six counterclaims against LCA. In her counterclaims, Ms. Hogg alleged, among other things, that

---

[3] At the same time, the parties also signed an "Agreed Order for Delivery of Deeds," calling for the approximately $1.2 million claimed by LCA to be deposited into the registry of the county court.

6

LCA had made "material misrepresentations of fact and law and failed to disclose material matters of fact and law proximately causing [Ms. Hogg's] damages and loss of inheritance;" had breached its fiduciary duty to Ms. Hogg; and had engaged in fraud in obtaining Ms. Hogg's signature on the contingent fee agreement. Ms. Hogg claimed that LCA had misrepresented the complexity of the estate case, thereby wrongfully "inducing her to give LCA a claim to twenty-five percent (25%) of her inheritance[.]" Ms. Hogg sought "a declaratory judgment that the CFA and the MSA are unconscionable, void and unenforceable [and] obtained through breach of fiduciary duty, by misrepresentations of fact and law, and fraud[,]" and she further sought the imposition of a "constructive trust" to "disgorge LCA from receiving unearned profits from a breach of fiduciary duty and/or fraud." Ms. Hogg further requested actual and exemplary damages against LCA, as well as attorney's fees, and concluded by asking that "this matter be heard by a jury."

On or about March 13, 2014, the parties filed an agreed motion to consolidate, requesting the district court to consolidate LCA's lawsuit with the contested portion of the estate proceedings that had been transferred from the county court, pointing out that the issues in both lawsuits were substantially the same and contained common issues of law and fact.[4] Although no written order consolidating the two cases appears in the appellate record, the district court signed and filed an "Agreed Scheduling Order" on March 17, 2014, containing the captions for both the district court and the county court proceedings. The court's scheduling order set a discovery deadline of September 1, 2014, thereby requiring the parties to complete discovery in five and a half months, and set both matters for jury trial on October 20, 2014.

LCA served Ms. Hogg with a request for production of documents, requesting, among other

---

[4] The parties also filed an "Agreed Motion for Joint Discovery and Joint Trial," also pointing out that the two cases were substantially similar, and suggesting that they should therefore be tried together.

things, that Ms. Hogg provide LCA with "audio and video recordings (and the transcriptions thereof)" that Ms. Hogg made during her meetings with the LCA attorneys. In her response, which was served on LCA on or about April 18, 2014, Ms. Hogg stated that: "No audio or video recordings are believed to exist and none are within Defendant's control or possession that are responsive to this request." On April 24, 2014, LCA filed a motion to compel production of documents, in which it claimed that Ms. Hogg had not fully or truthfully responded to this particular request. As evidence that Ms. Hogg had in fact recorded her meetings with the LCA attorneys, LCA attached an e-mail that Ms. Hogg had sent to the e-mail address of LCA attorney, Scott Ryburn, on February 14, 2014, the same day that LCA had filed its petition in intervention in the country court proceedings:

> Hey do not mention that i recorded every meeting with those attys in midland. Idk if its legal. And u def dont want them knowing i recorded mediation! My new attys will deal with it please dont even tell ur dad! No one needs to know! Love u dont worry! Focus on u sweet baby girl. Say ur prayers. It wil all come out in the end. I only appear to be stupid son! I love yall! George is watching over us! Hugs!
> Thank you, DGHogg-

In its motion to compel production, LCA speculated, based on Ms. Hogg's reference to her son in the e-mail, that Ms. Hogg had intended to send the e-mail to her son, Scott Lee Whitely, but had instead inadvertently sent the e-mail to LCA attorney Scott Ryburn. LCA also pointed out that if Ms. Hogg had in fact recorded the meetings with the LCA attorneys, as she claimed to have done in her e-mail, she was required to produce them in response to LCA's request for production.

The district court held a hearing on LCA's motion to compel production on May 16, 2014, at which Ms. Hogg testified that she did not record any of the meetings with the LCA attorneys. Ms. Hogg asserted that she had intentionally sent the e-mail to attorney Scott Ryburn claiming that she recorded the meetings, because she believed doing so would prevent the LCA attorneys "from

8

misrepresenting the truth" about what had occurred at their meetings.[5]   The district court granted LCA's motion to compel production, impliedly finding that the recordings did in fact exist, and issued a written order dated May 16, 2014, directing Ms. Hogg to produce "all audio and video recordings responsive to [LCA's] Requests for Production" within 20 days of the date of the order, thereby making June 5, 2014 the deadline for producing the recordings.   Ms. Hogg did not produce the recordings, and instead, on June 5, Ms. Hogg served LCA with a supplemental response to its discovery request, in which she again asserted that the recordings did not exist. Ms. Hogg pointed out in her supplemental response that she and her son, Scott Whitley, who attended the meetings with the LCA attorneys, had both testified under oath at the hearing on LCA's motion to compel production that no recordings had ever been made.

In the interim, on June 3, 2014, two days before serving LCA with this supplemental response, Ms. Hogg filed a motion to compel arbitration and stay proceedings.   In support of her motion, Ms. Hogg attached a copy of the parties' contingency fee agreement, and pointed out that it contained a clause in which the parties agreed to submit to arbitration any disputes connected with the agreement.[6]   Ms. Hogg argued that the parties' dispute over the amount of attorney's fees she owed to LCA clearly came within the scope of the arbitration clause.

On June 9, 2014, LCA filed its response to Ms. Hogg's motion to compel arbitration. LCA did not dispute the existence of the arbitration agreement or that the parties' dispute came

---

[5]  Although LCA attached the reporter's record of this hearing as an appendix to its brief, LCA failed to designate it as part of the appellate record.   We decline to consider it as part of the record on appeal.   However, Ms. Hogg acknowledged in her pleadings filed with the district court that she testified during the May 16 hearing that no recordings existed, and that she had sent her e-mail to the LCA attorneys for this purpose.

[6]  The arbitration clause provided that the "client and law firm agree that any disputes arising out of or connected with this agreement (including but not limited to the services performed by any attorney under this agreement) shall be submitted to confidential binding arbitration in Midland County, Texas in accordance with the rules of the American Arbitration Association."

within the scope of that agreement. Instead, LCA asserted that Ms. Hogg had waived her right to seek arbitration by substantially invoking the judicial process to its detriment. In its response, LCA chronicled the various actions that Ms. Hogg had taken in both the county court and the district court before filing her motion to compel arbitration, which included the following:

- raising the dispute in the estate proceedings in county court;
- requesting a jury trial in county court;
- signing the Rule 11 Agreement;
- filing her counterclaims in district court;
- requesting declaratory judgment in district court;
- requesting a jury trial in district court;
- signing the agreed motion to consolidate the proceedings;
- signing the agreed motion for joint discovery and a joint trial;
- signing the agreed scheduling order;
- participating in what LCA characterized as "significant" discovery; and
- litigating the discovery dispute with LCA.

LCA further argued that Ms. Hogg was attempting to "manipulate" the judicial system by filing her motion to compel arbitration only three days before the deadline set by the district court for her to produce the recordings. LCA pointed out that Ms. Hogg had been fully aware that LCA intended to file a motion for sanctions against her if she failed to produce the recordings, as counsel had warned Ms. Hogg at the May 16, 2014 hearing that it intended to file a motion for sanctions if she refused to produce the recordings as ordered by the court. LCA asserted that Ms. Hogg had only filed her motion to compel arbitration in an improper attempt to avoid the imposition of those sanctions. In response, Ms. Hogg asserted that LCA had not met its burden of establishing a waiver, claiming that she did not invoke the judicial process and that LCA had not presented any evidence to establish that it was prejudiced by her delay in seeking arbitration.

On the same day, LCA filed a motion for sanctions, asking that Ms. Hogg be sanctioned for not complying with the district court's order requiring her to produce the recordings. In its

motion, LCA suggested various discovery sanctions that could be imposed on Ms. Hogg for her failure to comply with the order, including, among other things, striking Ms. Hogg's counterclaims or prohibiting her from raising certain defenses at trial, as permitted by the Texas Rules of Civil Procedure. Ms. Hogg filed a response on June 13, 2014, claiming that she had complied with the trial court's order by affirming in her supplemental response to LCA's discovery request that no recordings had been made.

The district court held a hearing on the parties' pending motions on June 13, 2014. At the hearing, the court stated that it intended to take judicial notice of the court's files in both LCA's lawsuit in the district court and the estate proceedings that had originated in the county court, for the limited purpose of determining whether a Ms. Hogg had waived her right to arbitration. In response, both parties stated that they had no objection to the court doing so.

At the hearing, the parties renewed their arguments regarding whether Ms. Hogg had waived her right to arbitration. LCA's attorney once again accused Ms. Hogg of filing her motion to compel arbitration as a means of avoiding sanctions for her alleged discovery abuse, asserting that Ms. Hogg's attorney was aware that a motion for sanctions "was coming" when he made the decision to file the arbitration motion, pointing out that he had warned Ms. Hogg that he intended to file a sanctions motion at the May 16 hearing. In response, Ms. Hogg's attorney admitted that he had been aware of LCA's intent to file the sanctions motion before he filed the arbitration motion on Ms. Hogg's behalf. However, he asserted that LCA's motion for sanctions was premature, as the court had not yet made a ruling on whether the recordings actually existed. The district court immediately clarified that he had already determined that the recordings existed when it granted LCA's motion to compel production. In addition, the court expressed its opinion

11

that Ms. Hogg had testified falsely during the hearing on LCA's motion to compel production when she claimed that no recordings existed. At the conclusion of the hearing on the motion to compel arbitration, the district court ruled that Ms. Hogg had waived her right to invoke the parties' arbitration agreement, and denied Ms. Hogg's motion to compel arbitration. After a short recess, the parties informed the court that Ms. Hogg planned to appeal the district court's order, but that the parties wished to continue to engage in discovery while the appeal was pending, and in particular, the parties agreed that LCA would be entitled to take Ms. Hogg's deposition. The parties also advised the court that they wanted to try to mediate the case before engaging in further litigation. The district court advised the parties that it would defer ruling on LCA's motion for sanctions until after the parties attempted to mediate their dispute. The parties' mediation failed, and on July 8, 2014, the district court entered its written order denying Ms. Hogg's motion to compel arbitration.

Shortly thereafter, on July 18, 2014, the district court issued a written order, granting LCA's motion for sanctions, expressly finding that Ms. Hogg had recorded her meetings with the LCA attorneys, that she had testified falsely about the matter at the hearing on LCA's motion to compel production, and that she had violated the court's order to produce the recordings. As a sanction, the district court ruled that Ms. Hogg would not be allowed to present any evidence or testimony at trial regarding what occurred at her meetings with LCA.

## DISCUSSION

In a single point of error, Ms. Hogg contends that the district court erred by denying her motion to compel arbitration, and in particular, asserts that LCA did not meet its burden of establishing that she had waived her right to arbitration. For the reasons set forth below, we

12

disagree.

## The Burden of Proof and Standard of Review

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See Ellman v. JC Gen. Contractors,* 419 S.W.3d 516, 519 (Tex.App. – El Paso 2013, no pet.) (citing *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 605 (Tex. 2005)).   If these two showings are made, the burden then shifts to the party resisting arbitration to present a valid defense to the agreement, and absent evidence supporting such a defense, the trial court must compel arbitration.   *Ellman*, 419 S.W.3d at 519; *see also J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003).

In the present case, the parties do not challenge the validity of the arbitration agreement, and do not dispute the fact that the claims asserted fall within the scope of that agreement. Instead, the sole issue on appeal is whether the trial court abused its discretion in determining that Ms. Hogg waived her right to invoke the arbitration agreement.   Therefore, if no waiver is found, we will have no choice but to enforce the arbitration clause in the parties' agreement.

Because arbitration rights are contractual in nature, there is a "strong presumption against waiver of arbitration," and the Texas Supreme Court has therefore repeatedly warned that a party asserting a waiver has a high hurdle to overcome.   *Ellman,* 419 S.W.3d at 519 (citing *Perry Homes*, 258 S.W.3d at 589-90).   Nevertheless, the presumption is not irrebutable, and like any other contract right, arbitration can be waived if the parties agree to resolve a dispute in court. *Perry Homes,* 258 S.W.3d at 584, 593.

The Supreme Court has recognized that, "[u]nder a proper abuse-of-discretion review, waiver is a question of law for the court, and we do not defer to the trial court on questions of law."

13

*Perry Homes,* 258 S.W.3d at 598. A reviewing court should defer to a trial court's factual findings if they are supported by the evidence, but ultimately the question whether a waiver has occurred is a question of law, which an appellate court reviews de novo. *Id*; *see also Kennedy Hodges, L.L.P. v. Gobellan,* 433 S.W.3d 542, 545 (Tex. 2014) (per curiam); *Ellman,* 419 S.W.3d at 520 (whether a party has waived arbitration by litigation conduct is question of law, which we review de novo).

As the Texas Supreme Court recently noted, waiver is an "'intentional relinquishment of a known right' [that] can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." *G.T. Leach Builders, LLC v. Sapphire V.P., LP,* 458 S.W.3d 502, 511 (Tex. 2015) (citing *Perry Homes,* 258 S.W.3d at 590–91, 594); *Moayedi v. Interstate 35/Chisam Rd., L.P.,* 438 S.W.3d 1, 6 (Tex. 2014)). LCA contends that Ms. Hogg both expressly and impliedly waived her right to request arbitration, and we therefore consider each contention separately.[7]

### Analysis

### *Ms. Hogg did not Expressly Waive her Right to Arbitration*

A party makes an express waiver when it "affirmatively indicates that it wishes to resolve the case in the judicial forum, rather than through arbitration." *Okorafor v. Uncle Sam & Assocs.,* 295 S.W.3d 27, 39 (Tex.App. – Houston [1st Dist.] 2009, pet. denied); *see Triton Container Intern., Ltd. v. Baltic Shipping Co.,* CIV.A. 95-0427, 1995 WL 729329, at *3 (E.D. La. Dec. 8,

---

[7] Ms. Hogg asserts that we should not consider whether Ms. Hogg expressly waived her right to arbitration, as LCA did not make this argument in the trial court. *See* TEX.R.APP.P. 33.1(a) (as a "prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion…"). The record, however, does not clearly reflect that LCA only intended to assert that Ms. Hogg impliedly waived her right to arbitration, and we therefore believe it is appropriate to address both issues on appeal.

14

1995), *aff'd,* 95 F.3d 54 (5th Cir. 1996) (party's communication to opposing counsel expressly stating that it intended to settle the case and did not intend to seek arbitration, was an express waiver of the right to arbitrate); *Garcia v. Huerta*, 340 S.W.3d 864, 867 (Tex.App. – San Antonio 2011, pet. denied) (court found express waiver where party affirmatively stated in settlement agreement that it was waiving its right to enforce an arbitration agreement).

However, when a party has made no express statements indicating the intent to waive arbitration, and the party asserting a waiver instead relies solely on the other party's pretrial activities to assert a waiver, this invokes the doctrine of "implied waiver." *Okorafor*, 295 S.W.3d at 39.

In the present case, LCA is not able to point to any express statements that Ms. Hogg made in which she affirmatively stated her intention to give up her right to arbitrate. Instead, all of the statements LCA relies on, at best, *impliedly* expressed this intent. For example, LCA points to the statements in the Rule 11 Agreement, which Ms. Hogg signed, indicating that the parties had agreed to place the disputed attorney's fees into the court's registry, and the agreement that the funds were not to be distributed until there was a "judgment" in the district court. LCA asserts that the language requesting a "judgment" from the district court indicates that Ms. Hogg was expressly waiving her right to arbitration in favor of a district court judgment.

As Ms. Hogg points out, however, even though the Rule 11 Agreement called for a judgment by the district court, this did not preclude the possibility of arbitration, as the district court would have been required to enter a judgment either confirming or vacating the arbitration panel's decision. *See, e.g., Cambridge Legacy Group, Inc. v. Jain,* 407 S.W.3d 443, 448 (Tex.App.—Dallas 2013, pet. denied) (trial court must confirm an arbitration award except under

15

limited circumstances in which it may vacate modify or correct the award). Further, the Rule 11 Agreement contained no express statements affirmatively indicating that Ms. Hogg intended to give up her right to arbitration by signing the agreement. Thus, while Ms. Hogg's conduct in signing the Rule 11 Agreement may be considered as a factor in determining whether Ms. Hogg impliedly invoked the judicial process, it does not constitute an express waiver of arbitration.

Similarly, we disagree with LCA that Ms. Hogg expressly waived her right to arbitrate by filing various pleadings in which she requested a jury trial and agreed to a trial setting. The Texas Supreme Court has routinely rejected similar arguments that conduct of this nature constitutes an express waiver of arbitration. *See, e.g., G.T. Leach Builders,* 458 S.W.3d at 511 (the party's conduct in seeking a continuance of a trial and in signing a Rule 11 Agreement, in which the parties agreed to a new trial date, did not constitute an express waiver of arbitration); *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (rejecting a similar argument that statements made by a party in communicating with opposing counsel concerning a new trial date constituted an express waiver of arbitration); *In re Bank One, N.A.,* 216 S.W.3d 825, 827 (Tex. 2007) (per curiam) (statements made in a motion to set aside default judgment seeking a new trial date did not expressly waive arbitration rights). "Although the acts of requesting and then agreeing to a new trial date could be inconsistent with an intent to exercise the right to arbitrate, they do not constitute an *express* waiver of that right[.]" *G.T. Leach Builders,* 458 S.W.3d at 511.

Similarly, in the present case, we conclude that Ms. Hogg made no statements *expressly* relinquishing or repudiating her right to arbitration, and that at most, her pretrial litigation conduct raises only the question whether she *impliedly* waived her right to arbitration by invoking the judicial process.

16

***Ms. Hogg's Conduct Constituted an Implied Waiver of the Right to Arbitrate***

*The Totality of the Circumstances Test*

When parties have not expressly waived the right to arbitrate, a waiver may be implied from a party's conduct, so long as that conduct is "unequivocal." *Perry Homes,* 258 S.W.3d at 593 n.77 (citing *Van Indep. Sch. Dist. v. McCarty,* 165 S.W.3d 351, 353 (Tex. 2005)); *First Valley Bank v. Martin,* 144 S.W.3d 466, 471 (Tex. 2004); *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex. 2003). A party impliedly waives the right to arbitration "by substantially invoking the judicial process to the other party's detriment or prejudice." *Kennedy Hodges, L.L.P.,* 433 S.W.3d at 545 (citing *Perry Homes*, 258 S.W.3d at 589-90);*Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.,* 455 S.W.3d 573, 574-75 (Tex. 2015) (per curiam). It is well-established that merely taking part in litigation is not enough to establish an implied waiver, and that the party's conduct must clearly and unequivocally indicate an intent to avail itself of the judicial process. *Perry Homes*, 258 S.W.3d at 593; *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex. 2006). Further, the burden of proof is on the party asserting waiver, and the "hurdle" imposed by this burden is a "high one." *G.T. Leach Builders,* 458 S.W.3d at 511-12 (citing *Richmont Holdings, Inc.,* 455 S.W.3d at 575). Accordingly, in close cases, the strong presumption against waiver should govern. *Perry Homes*, 258 S.W.3d at 593.

In determining whether a party has impliedly waived the right to arbitrate, the party's pretrial activities should not be viewed in isolation; instead, a reviewing court must look to the totality of the circumstances to determine if the party's pretrial activities exhibited an intent to avail itself of the judicial process. *See Kennedy Hodges, L.L.P.*, 433 S.W.3d at 545; *Perry Homes,* 258 S.W.3d at 590–92 (court must decide waiver on a "case-by-case" basis by asserting

17

the totality of the circumstances.); *Ellman,* 419 S.W.3d at 519-20 (applying the totality of the circumstances test in concluding that a party waived its right to arbitrate by invoking the judicial process to the detriment of the opposing party).

Courts have identified the following relevant factors in making this determination:

• whether the party who pursued arbitration was the plaintiff or the defendant;
• how long the party who pursued arbitration delayed before seeking arbitration;
• when the party who pursued arbitration learned of the arbitration clause's existence;
• how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;
• how much time and expense has been incurred in litigation;
• whether the party who pursued arbitration sought or opposed arbitration earlier in the case;
• whether the party who pursued arbitration filed affirmative claims or dispositive motions;
• how much discovery has been conducted and who initiated the discovery;
• whether the discovery sought would be useful in arbitration;
• what discovery would be unavailable in arbitration;
• whether activity in court would be duplicated in arbitration;
• when the case was to be tried; and
• whether the party who pursued arbitration sought judgment on the merits.

*Ellman,* 419 S.W.3d at 519-20; *see also G.T. Leach Builders,* 458 S.W.3d at 512 (courts must consider a "wide variety" of factors in determining whether a party has substantially invoked the judicial process). As the Supreme Court pointed out in *Perry Homes*, all of these factors are rarely presented in a single case, and waiver has been established based on only a few or even a single one. *Perry Homes,* 258 S.W.3d at 591.

*The Trial Court Properly took Judicial Notice of its File in Making its Ruling*

As a preliminary matter, Ms. Hogg contends that LCA did not meet its burden of establishing an implied waiver at the hearing on her motion to compel arbitration, because LCA presented no evidence at that hearing of the parties' pretrial activities that occurred before Ms. Hogg filed her motion to compel. Ms. Hogg acknowledges that at the start of the hearing, the trial court took "judicial notice" of the court's file in both the county court and in LCA's lawsuit in

18

district court, without objection by either party, for the limited purpose of determining waiver. Ms. Hogg contends, however, that this did "nothing to help LCA carry its heavy burden" of producing evidence of waiver.

Ms. Hogg correctly points out that a trial court is not permitted to take judicial notice of the "truth of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file." *See, e.g., Guyton v. Monteau*, 332 S.W.3d 687, 692-93 (Tex.App. – Houston [14th Dist.] 2011, no pet.). However, a court may take judicial notice of its own records for other purposes. In particular, the Supreme Court has expressly approved the practice of taking judicial notice of the court's file for purposes of determining whether a party's pretrial activities substantially invoked the trial court's jurisdiction or whether the opposing party was prejudiced by those activities. *Perry Homes*, 258 S.W.3d at 595-96 (noting that the trial court had taken judicial notice of its file, which included discovery and motions to determine that there was extensive discovery conducted "about every aspect of the merits" of the case); *see also RSL Funding, LLC v. Pippins,* 424 S.W.3d 674, 685-86 (Tex.App. – Houston [14th Dist.] 2014, pet. pending) (trial court may take judicial notice of the record in determining whether a party was prejudiced by the other party's pretrial activities prior to moving for arbitration); *Citizens Nat. Bank v. Bryce,* 271 S.W.3d 347, 354-59 (Tex.App. – Tyler 2008, no pet.) (trial court took judicial notice of its file in determining whether party had been prejudiced by other party's pretrial activities). As such, our analysis will include the county and district court records of which the trial court took judicial notice.[8]

---

[8] LCA attached to its response to the motion to compel arbitration, six pleadings that Ms. Hogg filed in the county court and district court, including her response to Mark Hogg's petition to enforce the MSA, in which she requested a jury trial on the attorney fee dispute; the parties' Rule 11 Agreement; the parties' agreed motion to consolidate the two cases; the parties' agreed discovery motion; the agreed scheduling order; and Ms. Hogg's answer to LCA's lawsuit,

19

*Ms. Hogg Substantially Invoked the Judicial Process through her Pretrial Activities*

We now turn to our analysis of the pertinent factors in determining whether Ms. Hogg substantially invoked the judicial process.

Ms. Hogg Initiated the Litigation

LCA asserts that the litigation was initiated by Ms. Hogg on February 12, 2014, when Ms. Hogg filed her opposition to Mark Hogg's petition in the county court and raised the issue whether the contingent fee agreement was unconscionable or obtained through fraud or misrepresentation. Ms. Hogg asserts that this was only a defensive or "responsive" pleading, and cannot be considered the initiation of litigation. Ms. Hogg contends that the litigation over the validity of the contingent fee agreement was instead initiated by LCA when it filed its lawsuit in the district court on March 7, 2014, and she asserts that it is therefore "disingenuous" for LCA to contend that she initiated the litigation in county court. We disagree.

Initially, we note that Ms. Hogg is correct in pointing out that the filing of defensive pleadings, including mandatory or compulsive counterclaims, made in response to a party's pleadings, do not necessarily waive arbitration. *G.T. Leach Builders,* 458 S.W.3d at 512-13. However, we do not consider Ms. Hogg's pleadings in the county court to have been defensive in nature when considered in the context of her dispute with LCA over the validity of the contingent fee agreement. The dispute over the contingent fee agreement was initiated in a non-judicial setting when LCA communicated to Ms. Hogg that it intended to take its 25 percent contingent fee under the terms of the contingent fee agreement at the estate closing. Prior to that time, Ms. Hogg had not voiced any objections to the contingent fee agreement or to any of the terms of the MSA. However, after receiving LCA's communication, Ms. Hogg made the decision to raise her

raising her affirmative defenses and requesting a jury trial.

objections to the contingent fee agreement in a judicial setting, when she filed her response to Mark Hogg's petition in county court, in which she expressly alleged that the contingent fee agreement was unconscionable and should not be enforced, and asked that the matter be decided by a jury.

Further, LCA was not a party to that proceeding when Ms. Hogg raised the issue of the validity of the contingent fee agreement. Therefore, we would have great difficulty in concluding that her response was merely "defensive" with respect to anything LCA had done up until that point. In fact, LCA had not taken any judicial action at that point, and did not become a party to any judicial proceeding until after Hogg filed her response in county court attacking the contingent fee agreement, and essentially inviting LCA into the litigation. Not surprisingly, less than a week later, LCA became a party to the proceedings when the county court granted LCA's petition in intervention – a petition LCA filed in response to Ms. Hogg's initial court pleadings.[9]

Once LCA became a party to the county court proceedings, if Ms. Hogg had truly wanted to have her dispute submitted to arbitration, she could have invoked the arbitration clause, and asked the county court to stay the estate proceedings while the arbitration went forward. However, Ms. Hogg failed to do so, and instead, willingly pressed forward with litigating the dispute.

Further, we note that precisely because Ms. Hogg raised the issue of the validity of the contingent fee agreement in the county court, that portion of the estate case became contested, and without objection, the county court transferred the matter to the district court for decision.

---

[9] Ms. Hogg also points out that the MSA did not contain an arbitration clause, and contends that the arbitration clause in the contingent fee agreement did not come "into play" until LCA filed its lawsuit in district court seeking to enforce the contingent fee agreement. This argument overlooks that Ms. Hogg directly challenged the validity of the contingent fee agreement in the county court litigation, well before LCA filed its lawsuit in district court.

Moreover, shortly after the dispute was transferred to the district court, Ms. Hogg signed a Rule 11 Agreement that specifically referred to the parties' dispute regarding the contingent fee agreement, and detailed how that dispute was to be resolved, *i.e.*, by placing the disputed attorney's fees into the registry of the county court, while awaiting a final judgment of the district court. Significantly, these actions all occurred *before* LCA filed its lawsuit in the district court almost a month later on March 7, 2014. It is telling that even if LCA had not filed its lawsuit in the district court, the district court would have still been tasked with resolving the dispute over the validity of the contingent fee agreement, as the result of the pleadings that Ms. Hogg herself filed in the estate proceedings in county court.

Moreover, we note that Ms. Hogg herself acknowledged the overlap with these two proceedings when she subsequently signed an agreed motion to consolidate the county court proceedings with LCA's lawsuit in the district court, recognizing that both cases involved the same factual and legal issues initially raised by Ms. Hogg in the county court, *i.e.*, whether the contingent fee agreement was void or otherwise unenforceable. Therefore, we conclude that, regardless of which court was ultimately tasked with deciding the issue, Ms. Hogg was the first party to raise the issue of the validity of the contingent fee agreement in a judicial proceeding.

Ms. Hogg Raised Affirmative Claims for Relief and Requested a Jury Trial

We also find it significant that shortly after Ms. Hogg agreed to consolidate both matters in the district court, she filed an answer to LCA's lawsuit, in which she not only raised six counterclaims contesting the enforceability of the contingent fee agreement, but also made two affirmative claims for relief: Ms. Hogg requested that the district court enter a declaratory judgment that both the contingent fee agreement and the MSA were "unconscionable, void and

22

unenforceable," and that the district court impose a "constructive trust" to "disgorge LCA from receiving unearned profits from a breach of fiduciary duty and/or fraud." Moreover, in her pleadings, Ms. Hogg requested that she be awarded exemplary damages, attorney's fees, and "such other and further relief, at law or in equity, to which [Ms. Hogg] shall show herself justly entitled to receive." And finally, we note that Ms. Hogg specifically requested that these matters be heard by a jury.

We agree with Ms. Hogg that filing defensive pleadings, including mandatory or compulsive counterclaims, does not necessarily waive arbitration. *See, e.g., G.T. Leach Builders,* 458 S.W.3d at 512-13. However, in *G.T. Leach*, the Court drew a distinction between counterclaims that are defensive in nature, and those that seek "affirmative relief." *Id.* at 513. In *G.T. Leach*, the Court noted that the defendant had only filed compulsory counterclaims, and did not seek any affirmative relief in his counterclaims, and concluded that his actions therefore did not invoke the judicial process. *Id.* However, unlike the defendant in *G.T. Leach,* Ms. Hogg went a step beyond merely filing defensive counterclaims, and instead filed an affirmative claim for a declaratory judgment and to impose a constructive trust on the disputed monies, and requested the court award exemplary damages against LCA.

As this Court has previously held, a party's request for affirmative relief, such as request for a declaratory judgment or an award of exemplary damages, is an important factor in determining whether a party has substantially invoked the judicial process. *Ellman*, 419 S.W.3d at 520 (appellants substantially invoked the judicial process by, among other things, raising affirmative claims for relief in which they requested a declaratory judgment); *see also Okorafor,* 295 S.W.3d at 40 (finding that defendants had substantially invoked the judicial process by filing

23

multiple sworn and affirmative defenses, and affirmative claims for relief, including requests for declaratory relief, attorney's fees, and sanctions); *RSL Funding, LLC,* 424 S.W.3d at 681-87 (plaintiff who filed an action for declaratory judgment regarding an issue that was otherwise arbitrable thereby invoked the judicial process). As the Court noted in *RSL Funding*, requesting a declaratory judgment is significant because it is "designed" to "put to rest the question of [the] rights between the parties" in a judicial proceeding. *RSL Funding, LLC*, 424 S.W.3d at 684.

We recognize that bringing a claim for affirmative relief, while an important factor, is not dispositive in determining whether a party has substantially invoked the judicial process. Ms. Hogg correctly points out that she did not file any dispositive motions or seek adjudication of any of her claims against LCA prior to filing her motion to compel arbitration. *Cf. In re Mirant Corp.,* 613 F.3d 584, 589 (5th Cir. 2010) (finding waiver where defendant filed dispositive motions seeking dismissal of plaintiff's lawsuit based on its affirmative defenses). Therefore, we turn our attention to the other relevant factors to be considered in determining whether Ms. Hogg's conduct substantially invoked the judicial process.

Ms. Hogg's Pretrial Activities were Inconsistent with an Intent to Arbitrate

LCA asserts that after the judicial process began, Ms. Hogg engaged in numerous pretrial activities reflecting her intent to have the trial court resolve her dispute with LCA. In particular, LCA points out that Ms. Hogg filed numerous pretrial pleadings in which she requested a jury trial on the parties' dispute, agreed to a trial setting, and signed the Rule 11 Agreement in which she agreed to place the contested attorney's fees into the registry of the county court to be distributed only upon the "entry of a judgment of the District Court[.]" Although none of those pleadings amounted to an express waiver of Ms. Hogg's right to arbitrate, these pleadings evidenced an

24

intent to have the parties' dispute resolved in a judicial setting rather than through arbitration.

Ms. Hogg contends that none of her pleadings related to the merits of the case, and therefore should not be considered as invoking the judicial process. In this regard, Ms. Hogg points to our opinion in *Ellman*, in which we explained that one of the factors in determining whether a party waived its right to arbitration is whether the party filed pleadings that related to the merits of the case, rather than to arbitrability or jurisdiction. *Ellman,* 419 S.W.3d at 519-20. In the present case, however, none of the pleadings went to the question of arbitrability or jurisdiction, and instead related to matters relevant to the litigation itself. While many of the pleadings related to procedural issues, they were still filed with the intent of moving the litigation forward in a judicial setting. Accordingly, these pleadings are relevant to our analysis.

Ms. Hogg's intent to allow the matter to be resolved through litigation is also evidenced by her participation in discovery proceedings. As the Supreme Court noted in *Perry Homes,* a key question in determining whether a party has invoked the judicial process is the type and nature of discovery that took place before the party moved to compel arbitration. *Perry Homes,* 258 S.W.3d at 593. "'[A]llowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial'" might be sufficient to find a waiver. *Id.* at 590 (quoting *In re Vesta Ins. Group, Inc*., 192 S.W.3d at 764). However, as the Court noted in *Perry Homes*, it is not always clear precisely how much discovery is considered to be "full discovery." *Perry Homes,* 258 S.W.3d at 590.

In the present case, our analysis is somewhat hindered by the deficiencies in the record. The record before the trial court when it ruled on Ms. Hogg's motion to compel arbitration did not fully document the extent of the discovery conducted by the parties. Instead, LCA only attached a

copy of its request for production of documents that it served on Ms. Hogg, requesting ten items, including the recordings, and Ms. Hogg's responses thereto.[10]

Ms. Hogg correctly points out that LCA makes undocumented claims in its brief that Ms. Hogg and LCA served each other with several other discovery requests; that both parties provided responses to those requests; and that LCA in particular, provided Ms. Hogg with "voluminous documents" in response to her requests. As Ms. Hogg points out, LCA failed to provide the trial court with any of those additional requests or responses when it was considering Ms. Hogg's motion to compel arbitration. Further, although LCA contends in its brief that virtually all the discovery needed in the case was complete by the time Ms. Hogg filed her motion to compel arbitration, once again, there is nothing in the record to document that conclusion.

Nevertheless, while the record in this case is far from perfect, we are able to find some evidence in the record of the nature and extent of the discovery proceedings that occurred. First, as set forth in the sworn affidavit submitted to the trial court by Ms. Hogg's attorney in support of her motion to compel, the following discovery had taken place before Ms. Hogg filed her motion to compel arbitration:

> Defendant has filed one initial round of discovery consisting of 30 requests for admissions and 10 requests for the production of documents. A little over one-half of these discovery requests dealt with potential issues regarding the CFA, such as authenticity, validity, signing, etc.
>
> Defendant has taken three depositions (totaling approximately four hours) of the LCA attorneys who negotiated an original hourly fee agreement and an amended contingent fee agreement. Over one-half of the deposition time was related to issues surrounding the [contingent fee agreement].

---

[10] LCA later attached additional discovery items to its motion for summary judgment. However, as noted above, the summary judgment motion was filed *after* the trial court rendered its decision on the motion to compel arbitration, and it does not appear that the trial court had those items before it when it rendered its decision. We decline to consider those items in our review of the court's decision.

26

In addition, at the hearing on Ms. Hogg's motion to compel arbitration, the attorneys for both parties made undisputed representations to the district court regarding the discovery that had taken place. Ms. Hogg's attorney reiterated that the above-described discovery had taken place, while LCA's attorney added that LCA had taken the depositions of Ms. Hogg's son and her mother, but had not yet deposed Ms. Hogg.

While apparently acknowledging that this discovery did take place, Ms. Hogg asserts that it cannot be considered "substantial" discovery, noting that the parties only engaged in what she describes as "standard" discovery for three months before she moved for arbitration. Ms. Hogg questions whether this limited amount of discovery could be considered substantial in light of the high financial stakes involved in the parties' dispute over $1.2 million in attorney's fees. Ms. Hogg correctly points out that there are multiple cases in which the parties engaged in far more extensive discovery for far longer periods of time, yet the courts in those cases found that arbitration had not been waived. In fact, the Supreme Court recently chronicled several of its holdings in which it declined to find a waiver despite rather extensive and prolonged discovery periods ranging from six to nineteen months. *G.T. Leach Builder,* 458 S.W.3d at 514-15.

Although how long a party has engaged in pretrial activities is one factor to be considered in determining whether arbitration has been waived, a court should not look simply to the number of days between the initiation of litigation and the request for arbitration; instead, the court should consider how extensive the discovery was in the context of the facts of a particular case. *Citizens Nat. Bank,* 271 S.W.3d at 355 (citing *Perry Homes,* 258 S.W.3d at 590, 593). That the parties may not have exchanged voluminous documents during discovery for an extended period of time, such as the parties did in *Perry Homes,* does not mean that the discovery was not "extensive" in the

context of a less complicated case, where perhaps less discovery was needed. *See id.* at 356.

As LCA points out, while the financial stakes in the present case were high, the case itself was not particularly complex, involving a single issue whether the parties' contingent fee agreement was valid and enforceable, or alternatively, whether it was fraudulently obtained. Accordingly, it does not appear that the parties would have been required to conduct an extensive amount of discovery prior to trial. Further, the parties themselves agreed on March 17, 2014 to a relatively short discovery period ending on September 1, 2014, thereby giving them only five and a half months to complete discovery before the October 2014 trial setting. At the time Ms. Hogg filed her motion to compel arbitration, the parties were approximately half-way through the agreed-upon discovery cycle. While it is unclear exactly how much of the discovery related to the merits of the case due to the deficiencies in the record, Ms. Hogg's own attorney admitted in his sworn affidavit that at least half of the discovery conducted went to the question of the enforceability of the contingent fee agreement, which clearly went to the merits of this case.

While we cannot conclude that the parties in this case conducted "full discovery," we are able to conclude that the parties had conducted a substantial amount of discovery with regard to this single-issue case, and were likely nearing the end of the discovery proceedings when Ms. Hogg filed her motion to compel arbitration. Once again, however, this does not end our analysis, as the next factor is perhaps the most important factor in our determination whether Ms. Hogg substantially invoked the judicial process.

Ms. Hogg Willingly Engaged in Litigation Until She Faced an Adverse Ruling

LCA focuses much of its argument on Ms. Hogg's failure to move to compel arbitration until it became apparent that she was facing sanctions for her failure to produce the recordings of

28

her meetings with the LCA attorneys, pointing out that Ms. Hogg filed her arbitration motion only two days before the trial court's deadline for producing the recordings. LCA claims that Ms. Hogg's conduct in willingly pursuing litigation until the point at which the trial court ruled against her in the discovery dispute, and when she faced the prospect of potentially case-ending sanctions, was "manipulative" in nature.

Ms. Hogg attempts to counter LCA's argument by pointing out that when she filed her motion to compel arbitration, LCA had not yet filed its motion for sanctions.[11] However, Ms. Hogg's attorney admitted at the hearing on the motion to compel arbitration that LCA had warned him that it would pursue sanctions if Ms. Hogg failed to comply with the trial court's order, and that this warning came before he filed the motion to compel arbitration on Ms. Hogg's behalf. In addition, Rule 215.2 of the Texas Rules of Civil Procedure provides the trial court with the authority to impose a variety of sanctions for noncompliance with a discovery order. *See* TEX. R. CIV. P. 215.2. Accordingly, it would have come as no surprise to Ms. Hogg or her attorney that a motion for sanctions would be forthcoming if she did not comply with the trial court's order.

Moreover, Ms. Hogg was admittedly aware of the arbitration clause in the contingent fee agreement from the outset of the litigation, yet she chose to engage in the discovery dispute raised by LCA, filed pleadings in opposition to LCA's motion to compel production, and attended a court hearing on the motion. Only after she received an adverse ruling requiring her to produce the recordings, and only after she faced the possibility of sanctions for violating that ruling, did she file her motion to compel arbitration. In fact, Ms. Hogg's motion to compel arbitration

---

[11] Ms. Hogg also asserts that no such recordings exist. We note, however, that Ms. Hogg raised this issue in the trial court, and the trial court expressly disagreed with her, finding that the recordings existed, and that she was compelled to produce them.

acknowledged that she had prior knowledge of the arbitration clause and purposely delayed invoking the clause: "After some discovery and deliberation, [Ms. Hogg] has chosen to exercise her [arbitration] rights under the CFA[.]"

Other courts addressing situations involving the merits of the claim have concluded that when a party delays seeking arbitration until "after proceeding in litigation to an adverse result [this] is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver." *See, e.g., Haddock v. Quinn,* 287 S.W.3d 158, 180 (Tex.App. – Fort Worth 2009, pet. denied) (the plaintiff had already lost its declaratory judgment lawsuit, and had suffered a take-nothing judgment, when it filed its application for arbitration); *Jones v. Citibank (S.D.), N.A.,* 235 S.W.3d 333, 340–41 (Tex.App. – Fort Worth 2007, no pet.) ("[s]ubstantially invoking the judicial process may occur when the party seeking arbitration actively tried, but failed, to achieve a satisfactory result in litigation before turning to arbitration").

Contrary to Ms. Hogg's argument, we do not believe it is necessary for a trial court to have entered a final judgment against the moving party before a waiver will be found. Several courts have found that a party substantially invoked the judicial process by waiting to request arbitration until after it appeared clear that a favorable ruling would not be forthcoming in the judicial forum or that a trial court was not receptive to its arguments. For example, in *PRSI Trading Co. LP v. Astra Oil Trading NV,* No. 01-10-00517-CV, 2011 WL 3820817 (Tex.App. – Houston [1st Dist.] 2011, pet. denied) (on rehearing) (mem. op., not designated for publication), the defendant moved to compel arbitration only after the trial court had denied its motion for summary judgment based on its affirmative defenses. In finding that the defendant's conduct constituted waiver, the court

noted that: "This type of litigation behavior – unsuccessfully attempting to obtain a favorable result in court before requesting a referral to arbitration – is yet another factor supporting the trial court's waiver finding." *Id.*, at \*4; *see also Nw. Const. Co., Inc. v. Oak Partners, L.P.,* 248 S.W.3d 837, 848-49 (Tex.App. – Fort Worth 2008, pet. denied) (party substantially invoked the judicial process where he admitted that he had engaged in discovery to aid in mediation, and only invoked arbitration after mediation failed).

Similarly, in *In re Mirant Corp.,* the defendant filed a series of motions to dismiss, all of which the trial court denied. *In re Mirant Corp.,* 613 F.3d 584, 587-88 (5th Cir. 2010). After the trial court denied the defendant's third motion to dismiss, the defendant filed its motion to compel arbitration. The court noted that the defendant had been fully aware of its right to compel arbitration from the outset of the litigation, but had waited to file its motion to compel arbitration until after it became apparent that the trial court was "not receptive to its arguments[.]" The court determined that the defendant was in essence attempting to obtain "a second bite at the apple through arbitration[,]" and that it was playing a game of "heads I win, tails you lose," which it concluded was the "worst possible reason for failing to move for arbitration sooner than it did." *Id.* at 590. The court therefore concluded that the defendant had substantially invoked the judicial process through its actions prior to seeking arbitration. *Id.* at 590-91; *see also Holdco v. Cassady,* 654 F.3d 444, 454, 457 (3rd Cir. 2011) (party's failure to invoke arbitration clause until after trial court rejected its request for a preliminary injunction was an attempt to manipulate the judicial system by getting a "second bite" at the apple).

In the present case, Ms. Hogg was willing to participate in the discovery process and to litigate the discovery battle with LCA in a judicial forum only up until the point that she received

an adverse ruling from the district court and was faced with the possibility of having the court impose case-crippling sanctions. While Ms. Hogg is correct that we cannot know her actual intent in moving for arbitration at that point, there can be no doubt that her strategy in attempting to switch forums at this critical juncture was her only hope of getting a "second bite at the apple" on the issue of the parties' discovery dispute. Further, in light of the fact that Ms. Hogg admittedly knew about the arbitration clause from the outset of the litigation, we conclude that her conscious and informed decision to litigate her dispute in a judicial proceeding and to invoke the arbitration clause only after receiving the trial court's adverse ruling was more consistent with a "late game tactical decision" than a true intent to preserve the right to compel arbitration. *Tuscan Builders, LP v. 1437 SH6 L.L.C.,* 438 S.W.3d 717, 722 (Tex.App. – Houston [1st Dist.] 2014, pet. denied) (the circumstances surrounding the timing of party's motion to compel where more consistent "with a late-game tactical decision than an intent to preserve the right to arbitrate").

As such, based on the totality of the circumstances, we conclude that Ms. Hogg substantially invoked the judicial process before moving for arbitration.

### *LCA Would Be Prejudiced by Referring This Matter to Arbitration*

In order to establish that a party has waived its right to arbitration, we must conclude not only that the party has substantially invoked the judicial process, but also that the party opposing arbitration has been prejudiced by the moving party's delay in moving to compel arbitration. *Perry Homes,* 258 S.W.3d at 595. In the context of waiver of an arbitration clause, "prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* at 597 n. 93 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d

32

341, 346 (5th Cir.2004)). Such unfairness results when a party attempts "to have it both ways by switching between litigation and arbitration to its own advantage[.]" *Perry Homes,* 258 S.W.3d at 597. Whether a party was prejudiced is a question of law that a reviewing court reviews de novo. *Id.* at 598 (citing *Reliance Nat'l Indem. Co. v. Advance'd Temps, Inc.,* 227 S.W.3d 46, 50 (Tex. 2007)).

*The Delay in Invoking the Arbitration Clause*

LCA contends that it was prejudiced by Ms. Hogg's delay in seeking arbitration, pointing out that Ms. Hogg had been aware of the existence of the arbitration clause from the outset of litigation, yet waited to file her motion to compel arbitration three months after the parties began discovery, and less than four months before the trial setting. We do not, however, find that this approximate three-month delay, standing alone, prejudiced LCA's case. In fact, various courts have found that much longer delays are not sufficient to cause prejudice to the opposing party's case. *See, e.g., In re Fleetwood Homes of Tex., L.P.,* 257 S.W.3d 692, 694 (Tex. 2008) (per curiam) (eight-month delay); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex. 2006) (per curiam) (two-year delay).

The real issue in determining whether prejudice exists is not typically the length of the delay itself, but what activities occurred during the period of delay, and how those activities affected the party opposing arbitration. *Perry Homes,* 258 S.W.3d at 600; *see also In re Vesta Ins. Group, Inc.* 192 S.W.3d at 763 (a party does not waive arbitration merely by delay, and instead, the party urging waiver must establish that any delay resulted in prejudice). The two key critical factors in determining whether a party was prejudiced by the opposing party's delay in asserting arbitration are: (1) the expenses incurred by the party during the period of delay; and (2) the

33

effect on the parties' legal positions, including whether the party moving for arbitration would gain an unfair advantage by switching forums from litigation to arbitration. *Perry Homes,* 258 S.W.3d at 597. We therefore consider each of these issues separately.

*The Expenses Incurred by LCA*

LCA claims that it incurred "significant" expenses during the discovery proceedings that occurred before Ms. Hogg moved to compel arbitration, including the expenses that it incurred in litigating Ms. Hogg's discovery abuse. In addition, LCA points to the expenses it incurred in initiating discovery, such as taking the depositions of Ms. Hogg's mother and son, as well as the expenses it incurred in responding to Ms. Hogg's discovery requests.

In determining whether a party was prejudiced by participating in discovery, the focus must be on the discovery that was initiated by the moving party, and we will not consider the discovery initiated by the opposing party. *Ellman*, 419 S.W.3d at 522; s*ee also Perry Homes,* 258 S.W.3d at 600 (a party who *requests* lots of discovery is not prejudiced by getting it and taking it to arbitration in the same way that a party who *produces* lots of discovery outside the stricter discovery limits in arbitration). We therefore decline to take into consideration the expenses that LCA alleges it incurred in terms of the discovery that it initiated, and we must instead focus on the discovery that Ms. Hogg initiated.

In addition, in determining how much discovery Ms. Hogg initiated, we are once again stymied by the deficiencies in the record. Although the record reflects that Ms. Hogg served LCA with 30 requests for admission and 10 requests for production, there is nothing in the record to support LCA's contention that it responded to those requests by giving Ms. Hogg "voluminous" documents. In fact, there is nothing in the record from which we can determine what Ms. Hogg

34

requested, how LCA responded to her requests, or even if it did respond. And, as Ms. Hogg points out, there is nothing in the record to establish the expenses that LCA incurred in responding to those requests. Similarly, although the record does reflect that Ms. Hogg conducted the deposition of LCA attorneys, there is again nothing in the record to reflect the costs that LCA incurred with regard to those depositions.

And, assuming it is appropriate to consider the expenses that LCA incurred in litigating Ms. Hogg's discovery abuse, LCA has also failed to provide any evidence relating to the expenses incurred in litigating that matter. Further, although LCA claims it was required to file six pleadings and attend two court hearings to resolve the discovery abuse, we note that only one of those pleadings, *i.e.*, its motion to compel production, was filed before Ms. Hogg moved for arbitration, and only one court hearing was held to address the discovery abuse before the motion to compel arbitration was filed.[12]

We are aware that a party need not present evidence of the exact costs it incurred when asserting a claim of prejudice. Although proof of prejudice is required to support a claim that a party waived arbitration, "proof establishing the precise extent of that prejudice is not." *Perry Homes,* 258 S.W.3d at 599–600; *see also RSL Funding, LLC,* 424 S.W.3d at 686 (citing *Perry Homes,* 258 S.W.3d at 599–600). We recognized this principle in *Ellman*, where the defendant conceded that before it moved for arbitration, it had initiated substantial discovery to which the plaintiff was required to respond, but complained that the plaintiff had failed to provide evidence

---

[12] The other pleadings were filed after the district court issued its order to compel production of documents, and all centered on whether Ms. Hogg should be sanctioned for violating the court's order. Ms. Hogg argues, and we agree, that we should not consider the costs incurred by LCA in filing those pleadings or in attending the sanctions hearing, because those actions all occurred after Ms. Hogg filed her motion to compel arbitration. *See, e.g., In re ReadyOne Indus., Inc.,* 294 S.W.3d 764, 772 (Tex.App. – El Paso 2009, orig. proceeding) (where discovery was conducted after the motion to compel arbitration was denied, the parties' conduct in engaging in discovery could not be considered an act that waived arbitration).

of the expenses it incurred in responding to that discovery. In upholding the trial court's finding that the plaintiff had been prejudiced by the defendant's actions, we concluded that the plaintiff's failure to provide proof of the expenses was not dispositive, echoing the Supreme Court's opinion that when extensive discovery has been conducted, a party opposing arbitration is not always required to "prove the cost of the extensive discovery in order to prove prejudice." 419 S.W.3d at 522 (citing *Perry Homes,* 258 S.W.3d at 599–600).

However, as set forth above, in the present case, not only did LCA fail to provide any evidence of the costs it incurred in responding to Ms. Hogg's discovery requests, it failed to provide any evidence from which we could conclude that the discovery requested by Ms. Hogg was "substantial" or that LCA provided her with "extensive" documents in response to her requests. In a somewhat similar situation, the Supreme Court declined to make a finding of prejudice where, among other things, the party claiming waiver alleged that he incurred significant expenses in responding to the opposing parties' discovery requests, yet failed to present any record of the discovery to the trial court. *In re Vesta Ins. Group,* 192 S.W.3d at 763. According to the Court, it was therefore unable to determine whether the discovery was "limited or extensive," and was consequently unable to determine whether the party was actually prejudiced by being required to respond to it. *Id.*

Moreover, the Court in *Vesta* also found it significant that the party claiming prejudice acknowledged that the discovery produced in the case would be "useful whether the case is arbitrated or tried." *Id.* The Court found this to be an important factor in concluding that no prejudice was shown in that case. *Id.*; *see also Pilot Travel Centers, LLC v. McCray,* 416 S.W.3d 168, 185 (Tex.App. – Dallas 2013, no pet.) (party did not waive its right to arbitration by

36

conducting what it described as extensive discovery, where party did not present evidence of the discovery itself and did not allege that the discovery already conducted would not be useful in arbitration); *In re ReadyOne Indus., Inc.,* 294 S.W.3d 764, 773 (Tex.App. – El Paso 2009, orig. proceeding) (where there was no evidence that discovery obtained could not be used at arbitration, or that any of the evidence would not have been attainable in arbitration, no prejudice has occurred).

Similarly, in the present case, LCA concedes that the "written discovery and depositions conducted by the parties to date could be used in arbitration." Therefore, based on the record before us, we are unable to conclude that LCA would suffer any significant financial detriment if the parties' dispute was submitted to arbitration.

### Ms. Hogg Attempted to Switch Forums to Gain an Unfair Advantage

The issue of whether a party has suffered financial detriment, however, is not the only factor to be considered in a prejudice analysis, and instead prejudice may be found when a party "attempt[s] to have it both ways by switching between litigation and arbitration to its own advantage[.]" *Perry Homes*, 258 S.W.3d at 597. As the Court explained in *Perry*, "'a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party.'" *Id.* (citing *In re Tyco Int'l Ltd. Sec. Litig.,* 422 F.3d 41, 46 n. 5 (1st Cir. 2005)).

LCA contends that Ms. Hogg's last-minute decision to switch forums only after she received an adverse ruling from the district court requiring her to produce the recordings, was exactly the type of manipulative conduct that the Court denounced in *Perry Homes*. LCA contends that Ms. Hogg's invocation of the arbitration clause after receiving this adverse

37

discovery ruling was a clear attempt to deprive LCA of the trial court's ruling and to force LCA to relitigate the issue in front of an arbitration panel, thereby giving Ms. Hogg her proverbial second bite at the apple. LCA contends that requiring it to relitigate this issue anew renders all of its prior "efforts to hold Ms. Hogg accountable for her discovery abuse" for naught, and additionally does nothing to "further the goals of efficiency and results in prejudice to LCA."

Ms. Hogg does not dispute that forcing a party to relitigate an issue already resolved by a trial court can be a factor in determining prejudice. *See, e.g., Holmes v. Graves,* No. 01-12-01032-CV, 2013 WL 6506306, at *7 (Tex.App. – Houston [1st Dist.] Dec. 10, 2013, no pet.) (mem. op., not designated for publication) ("[r]equiring Defendants to defend against Plaintiffs' claims before a new factfinder after Defendants have already successfully defended substantially similar litigation results in prejudice to Defendants"). Instead, Ms. Hogg contends that there is nothing in the record to definitively establish that LCA will necessarily be forced to relitigate the discovery abuse in front of the arbitration panel, and that it is possible the arbitration panel could chose to accept the district court's prior ruling.[13] However, we do not believe that there would be, or even could be, anything definitive in the record on this issue. Because arbitrators have "almost unbridled discretion" regarding discovery, it is virtually impossible to determine what the arbitration panel might do on this issue. *Perry Homes,* 258 S.W.3d at 599; *see also Citizens Nat. Bank,* 271 S.W.3d at 354-59. Thus, we cannot discount the very real possibility that LCA would in fact be deprived of the trial court's favorable rulings if the matter went to arbitration.

---

[13] Ms. Hogg intimates that the discovery abuse was not occasioned by her conduct, and that, contrary to LCA's assertions, she was not actually guilty of any discovery abuse, claiming that she properly responded to LCA's discovery requests, asserting that she had no recordings of her meetings with LCA's attorneys. As set forth above, however, the trial court ruled that the recordings do in fact exist, and we must accept that finding as true.

38

Ms. Hogg also points out that before she moved for arbitration, the district court had only issued its order compelling production of documents, and had not yet issued its order sanctioning her for violating that order. Ms. Hogg contends that it would therefore be improper for us to consider the existence of the district court's sanctions order in determining whether LCA would be prejudiced by referring the matter to arbitration. Although we recognize that the sanctions order itself was entered after Ms. Hogg moved for arbitration, this does not mean that we cannot take into consideration the fact that when she moved for arbitration, Ms. Hogg was facing the near certainty that she would be sanctioned.

As explained above, Ms. Hogg found herself facing these sanctions due to her own conduct, first in sending the e-mail to the LCA attorney, claiming that she had recordings of her meetings with the LCA attorneys, and later in contending that the recordings did not exist. Further, Ms. Hogg thereafter voluntarily engaged in the discovery dispute with LCA regarding the existence of the recordings in the district court, clearly expressing her willingness to allow the district court to resolve the dispute by filing an opposition to LCA's motion to compel production and attending a court hearing on the motion. Moreover, Ms. Hogg took her chances when she allowed the district court to rule on the motion, and ultimately received an unfavorable ruling, in which the court ordered her to produce the recordings by June 5, 2014. Ms. Hogg was clearly on notice that she would be sanctioned for failing to comply with the order; and in fact, it appears that she had no intention of complying with the order, as she filed a supplemental response to LCA's request for production on the day of the June 5 deadline, still claiming that the recordings did not exist. Given the virtual inevitability that sanctions would be imposed against her at this juncture in the proceedings, we find it insignificant for purposes of our prejudice analysis that the district

39

court had not yet issued its sanctions order when Ms. Hogg made her decision to move for arbitration.

The court in *Sedillo v. Campbell,* 5 S.W.3d 824, 829 (Tex.App. – Houston [14th Dist.] 1999, no pet.), also reached a similar conclusion, finding prejudice in a case in which a trial court entered an adverse judgment against a defendant, but did so after the defendant had moved for arbitration. In that case, the defendant was facing the prospect that requests for admission would be deemed admitted based on his failure to respond and filed for bankruptcy, which automatically stayed the trial court litigation. Six months later, after the bankruptcy proceeding was dismissed upon a finding that the defendant had filed it in bad faith, the plaintiff filed a summary judgment motion based on the defendant's deemed admissions. The defendant thereafter filed his late responses to the request for admissions, a response to the plaintiff's summary judgment motion, an amended answer raising affirmative defenses and a counterclaim, and a request for jury trial. However, in the interim, before the trial court had the opportunity to rule on the plaintiff's summary judgment motion, the defendant filed a motion to compel arbitration. The trial court denied the motion, concluding that the defendant had waived his right to invoke arbitration, and on the same day, granted the plaintiff's motion for summary judgment. *Id.* at 825-26.

In upholding the trial court's decision, the court of appeals concluded that the plaintiff would have been prejudiced if the case had been referred to arbitration at that late stage in the proceedings, as it would have deprived the plaintiff of the benefits of the summary judgment order that had been entered in her favor. *Id.* at 829. In reaching this conclusion, the court found it insignificant that the summary judgment order had been entered after the defendant had filed his motion to compel arbitration, noting that if the defendant had filed his motion for arbitration in a

timely manner, the above-described chain of events would not have occurred, and the plaintiff would not have been able to request or "obtain a judgment in the face of a motion for arbitration." *Id*.

We similarly conclude that LCA would not have been able to obtain the sanctions order if Ms. Hogg (i) had moved for arbitration as soon as practicable, (ii) had not made the decision to instead engage in discovery proceedings and (iii) had not voluntarily litigated the discovery dispute with LCA, only to move for arbitration when it became apparent that she had lost the discovery battle and was facing sanctions as the result of her conduct in the case. As Ms. Hogg was admittedly aware of the arbitration clause from the outset of litigation, referring the matter to arbitration at this critical juncture in the proceedings would not only unfairly deprive LCA of the victory it received in the discovery battle, but allow Ms. Hogg to engage in the very practice condemned by the Supreme Court in *Perry Homes*, by allowing her to "have it both ways by switching between litigation and arbitration to [her] own advantage[.]" *Perry Homes*, 258 S.W.3d at 597; *see also Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 457 (3d Cir. 2011) (it is not difficult to find prejudice when the party moving for arbitration waited until after the district court denied its request for a preliminary injunction, concluding that a party should not be allowed to "test out the merits of its case" and only then resort to arbitration when it becomes apparent that the "court regards its case as standing on weak footing").

In determining whether prejudice has resulted in "cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back." *Perry Homes,* 258 S.W.3d at 595. In the present case, we conclude that the point at which Ms. Hogg could not "take it back" occurred when, after willingly participating in litigation over the

41

discovery dispute, she suffered an adverse ruling from the trial court, and was faced with the near-certainty of having a sanctions order entered against her. Ms. Hogg's last-ditch effort to save her case from the impending sanctions order, by seeking a new forum in which she could potentially relitigate that issue, simply came too late.

Therefore, because we find that Ms. Hogg purposefully and unjustifiably manipulated the exercise of her arbitral rights to her own advantage and to LCA's prejudice, we conclude that, based on these unique facts, Ms. Hogg waived her right to arbitration.

## CONCLUSION

We affirm the district court's order denying Ms. Hogg's motion to compel arbitration.[14]


STEVEN L. HUGHES, Justice

November 10, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

---

[14] In light of our ruling affirming the district court's order, we hereby lift the stay order issued by this Court on August 12, 2014.