In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00245-CV
_____

**BBX OPERATING, LLC, Appellant**

**V.**

**AMERICAN FLUORITE, INC., GEOSOUTHERN ENERGY
PARTNERS, LP AND GEOSOUTHERN ENERGY CORP., Appellees**

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 35155**

**MEMORANDUM OPINION**

BBX Operating, LLC ("BBX" or "Appellant") brings this accelerated interlocutory appeal challenging the trial court's order granting a motion to stay arbitration filed by Appellees American Fluorite, Inc. ("AFI"), GeoSouthern Energy Partners, LP ("GSEP"), and GeoSouthern Energy Corp. (GSEC") (collectively "Appellees"). We affirm.

1

Procedural Background

Original Petition

On December 23, 2015, the Appellees filed their original petition against BBX. Therein, Appellees alleged that BBX is the operator of certain oil and gas leases (the "Subject Leases") in Jasper, Tyler, and Polk County, Texas. Appellees also alleged that they own undivided mineral leasehold working interests in the Subject Leases and that BBX and AFI, among other entities, are parties to the "Area of Mutual Interest Agreement[,] Neches II Prospect Area[,] Tyler County, Texas" (the "Neches II AMI") dated March 24, 2003.

According to the petition, the Appellees and BBX entered into certain joint operating agreements and related development agreements (the "Subject Contracts") that govern the parties' rights and obligations with respect to operations on the Subject Leases. The Appellees alleged that they had fully paid all undisputed joint interest billings to BBX, but that BBX had improperly withheld and continued to withhold proceeds from hydrocarbon sales from Appellees. Appellees asserted various claims against BBX: (1) breach of contract, (2) conversion, (3) section 91.402(a) of the Natural Resources Code, (4) foreclosure of a statutory lien, and (5) declaratory judgment. In its claim for declaratory judgment, Appellees sought an "accounting and declaratory judgment determining amounts lawfully owed by

2

[Appellees] under the Subject Contracts, including lease operating expenses, developments costs and related charges." The Appellees also sought the return of cash call funds paid to BBX allegedly "for operations which BBX has not conducted." In support of its claims, Appellees attached cash call letters by BBX dated May 27, 2015, alleged to represent costs incurred and paid by BBX for the Make My Day and Swamper Prospects in Jasper County; the Turkey Creek, Lake Tejas, Frog Pond, and Fish Camp Prospects in Tyler County; and the Ollie East Prospect in Polk County. On January 29, 2016, BBX filed its original answer, asserting a general denial.

Rule 11 Agreement

On March 7, 2016, the parties signed and filed a Rule 11 Agreement, which we summarize below:

- The parties will engage in mediation or good faith discussions to resolve outstanding issues;
- BBX shall pay to Appellees $2,031,957.26 in revenue payments for the period of October 2015 through February 2016;
- BBX shall pay to Appellees revenue payments for production on a monthly basis commencing March 25, 2016;
- if BBX pays Appellees the revenue payments for October 2015 through February 2016, Appellees shall pay to BBX $1,295,761.29 for joint interest billings for the period August 2015 through January 2016;
- Appellees shall pay to BBX joint interest billings on a monthly basis commencing February 2016 under the terms of the applicable joint operating agreements;

3

- within one business day following the agreed-upon mediation, BBX shall pay to GSEC $218,798.18 representing the return of Appellees' cash call payment for the Mystic River #2 well;
- Appellees and BBX shall meet to identify and agree on BBX documents and records that Appellees are authorized to access and review, and BBX shall give Appellees access to review and copy the agreed-upon documents; and
- within three business days of BBX's satisfaction of its obligations under the Rule 11 Agreement, Appellees will nonsuit the lawsuit.

Cross-Motions to Enforce Rule 11 Agreement

On December 15, 2016, BBX filed a motion to enforce the Rule 11 Agreement. Therein, BBX alleged that it had met its obligations under the agreement but that Appellees had not nonsuited the lawsuit. BBX sought the court's "assistance in enforcing the March 7, 2016[] Rule 11 Agreement, and ordering [Appellees] to comply with their promise to nonsuit this case." The following day, on December 16, 2016, Appellees also filed a motion to enforce the Rule 11 Agreement. The Appellees alleged that BBX had refused to pay $644,537.87 in production revenues since October 2016, and Appellees offered to deposit any joint interest billings BBX claimed Appellees owed into the trial court's registry.

The trial court held a hearing on the cross-motions on January 11, 2017. BBX argued at the hearing, among other things, that

> . . . if [Appellees] [have] issues that have broken out since the time this case should have been nonsuited, they're perfectly free to file a lawsuit. That lawsuit would not be barred by repose, collateral

4

estoppel, res judicata, statute of limitations. None of those bars close the doors of the courthouse to [Appellees] if they have nonpayment of this, not crediting this, they're free to bring their claim.

Appellees argued that they were not asserting new claims but only sought enforcement of the Rule 11 Agreement because BBX had failed to make timely payments thereunder.

On January 24, 2017, the court signed an order denying BBX's motion to enforce and granting Appellees' motion to enforce. Therein, the court ordered BBX to pay Appellees their share of production revenue attributable to production sold in October, November, and December of 2016 and to pay Appellees for production revenue on a monthly basis commencing in March of 2016. On February 24, 2017, BBX filed an Emergency Motion to Stay Enforcement of Order Granting Plaintiffs' Motion to Enforce Rule 11 Agreement and Denying Defendants' Motion to Enforce Rule 11 Agreement. Therein, BBX alleged that it had not received notice of the court's January 24, 2017 order and its counsel was in the process of preparing a petition for writ of mandamus to challenge the order. The trial court held a hearing on the emergency motion on March 1, 2017. Following the hearing, the trial court entered an amended order on March 1, 2017, denying the emergency motion and denying BBX's motion to enforce the Rule 11 Agreement.

5

BBX's Demand for Arbitration

On March 10, 2017, BBX and Kodiak Resources, Inc. ("Kodiak") filed a demand for arbitration with the American Arbitration Association ("AAA"). In their arbitration complaint, BBX and Kodiak alleged that their dispute "arises from, and is related to, the Neches II Prospect Area, Area of Mutual Interest Agreement, Tyler County, Texas[.]"[1] The arbitration complaint alleged that AFI had breached its duties under the Neches II AMI by failing to pay Kodiak for its proportionate share of leasehold acquisition costs and by failing to pay BBX for costs incurred by BBX and advances in support of the drilling program. The costs for which BBX sought reimbursement were allegedly incurred between April 2015 and January 2016 and represented costs for drilling programs in the Fish Camp, Frog Pond, Lake Tejas, and Turkey Creek areas. BBX sought recovery in the alternative under quantum meruit.

---

[1] The arbitration demand alleged that Kodiak acted as nominee under the Neches II AMI and that its duties included acquisition of leasehold and other mineral interests within the area of mutual interest. On October 5, 2017, BBX filed a counterclaim in the underlying lawsuit, which included Kodiak's petition in intervention. Kodiak is not a party to this appeal, and we address Kodiak only as necessary to our disposition.

According to the arbitration complaint, the Neches II AMI contained a mandatory arbitration provision. BBX attached a copy of the Neches II AMI as an exhibit, which includes the following:

> ARBITRATION: Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") by three (3) arbitrators. Each Party shall appoint one arbitrator who shall be an impartial and independent person. If a Party fails to appoint an arbitrator within thirty (30) days from the date a Demand to Arbitrate was made under Rule 6, the AAA shall make the appointment of the arbitrator. The two (2) arbitrators thus appointed shall appoint the third arbitrator who shall be an impartial and independent person. If said two (2) arbitrators fail to appoint the third arbitrator within sixty (60) days from the date a Demand to Arbitrate was made under Rule 6, the AAA shall make the appointment of the third arbitrator. Should any of the arbitrators appointed die, resign, refuse or become unable to act before a decision is given, the vacancy shall be filled by the method set forth in this clause for the original appointment. The arbitration shall be held in Austin, Texas. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Appellees' Amended Petition

The Appellees filed an amended petition on March 13, 2017, adding a claim for breach of the Rule 11 Agreement. Appellees also added a declaratory judgment claim, seeking to have BBX removed as operator of the Subject Leases.

BBX's Petition for Writ of Mandamus

On March 16, 2017, BBX filed a petition for writ of mandamus with this Court in appellate cause number 09-17-00079-CV. BBX argued that the petition arose

from "a dispute regarding obligations owed under a rule 11 agreement, which was intended to settle the underlying lawsuit." BBX argued that the trial court had abused its discretion, and BBX asked this Court to issue an order directing the district court vacate its orders of January 24, 2017 and March 1, 2017. BBX's petition alleged that the relevant evidence demonstrated that Appellees owed BBX $5,177,162.26.

In this Court's opinion dated April 20, 2017, we conditionally granted the writ of mandamus, explaining that the cross-motions to enforce the Rule 11 Agreement established that a dispute existed whether there had been full performance under the agreement. *See In re BBX Operating, LLC*, No. 09-17-00079-CV, 2017 Tex. App. LEXIS 3526, at *4 (Tex. App.—Beaumont Apr. 20, 2017, orig. proceeding) (mem. op.). We further explained that a judgment enforcing the settlement agreement may only be rendered after a trial on the merits or by summary judgment. *Id.* at *3 (citing *In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d 447, 450 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding)). Therefore, we concluded that the trial court abused its discretion by resolving the dispute without employing one of the procedural vehicles authorized by the Texas Rules of Civil Procedure. *Id.* (citing Tex. R. Civ. P. 166a, 216, 262; *Barragan v. Nederland Indep. Sch. Dist.*, No. 09-13-00350-CV, 2015 Tex. App. LEXIS 1103, at **8-10 (Tex. App.—Beaumont Feb. 5, 2015, pet. denied) (mem. op.)).

<u>Motion to Stay Arbitration</u>

On April 7, 2017—after BBX had filed its demand for arbitration, after BBX had filed its petition for writ of mandamus, but prior to the issuance of this Court's opinion on BBX's petition for writ of mandamus—Appellees filed a motion to stay arbitration in the trial court. In the trial court, Appellees argued that BBX's claim is not within the scope of the arbitration clause because its claims arise out of the joint operating agreements, not out of the Neches II AMI. Appellees also argued that BBX had waived any right to arbitration by "consistently raising the Subject Claim as a reason why [the trial court] should not grant [Appellees'] Motion to Enforce and why the Court of Appeals should grant its Petition [for Writ of Mandamus]." According to Appellees, BBX's demand for arbitration concerns a claim that "has been at issue in this lawsuit since it was filed." Specifically, Appellees also argued that the amount sought by BBX in arbitration is equal to the amount of the cash call letters that BBX sent to AFI in May 2015 pertaining to certain Tyler County prospects. According to Appellees, BBX "invoked the litigation process by (i) including the Subject Claim in the Rule 11 Agreement, (ii) asserting the Subject Claim as grounds to dismiss [Appellees'] claims in this lawsuit, and (iii) invoking the Subject Claim in its Petition." Citing to *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 782 (Tex. App.—El Paso 2015, no pet.), Appellees argued that

9

BBX had impliedly waived its right to arbitration by having substantially invoked the judicial process to Appellees' detriment or prejudice. Appellees also argued that BBX should not be permitted to use its claims "as a sword and shield to the Court of Appeals and simultaneously pursue that claim in arbitration[]" and that Appellees had already incurred attorneys' fees.

BBX's Response to Motion to Stay Arbitration

On May 15, 2017, BBX filed its response to Appellees' motion to stay arbitration. In its response, BBX argued that, in the arbitration proceeding, BBX and Kodiak sought "recovery of amounts advanced by them for leasehold acquisition costs and other costs necessary to secure drilling rights" in the area covered by the Neches II AMI, and that the Neches II AMI contained a mandatory arbitration provision. BBX also argued as follows:

> At no time has BBX asserted a counterclaim, sought recovery of the amounts now sought in the Arbitration Proceeding, or requested affirmative relief (other than enforcement of the Rule 11 Agreement). BBX has not propounded discovery requests to Plaintiffs.
>
> . . . .
>
> Though this case was filed in December 2015, apart from the activity relating to the enforcement of the Rule 11 Agreement (and the mandamus action), there has been little activity in this case. BBX has not sought any discovery. There is no reason that this case and the Arbitration Proceeding could not proceed simultaneously, and to the extent there is any overlap in discovery the discovery product could be used in both matters. Finally, there is no trial setting in this case.

10

. . . .

> BBX has not taken conflicting positions on arbitration, gained any information it could not obtain in arbitration, or manipulated the legal system.

Relying upon *Perry Homes v. Cull*, 258 S.W.3d 580, 593-94 (Tex. 2008), BBX argued it had not substantially invoked the litigation process to Appellees' detriment and, therefore, it had not waived its right to arbitrate.

Trial Court's Order on Motion to Stay Arbitration

The trial court heard arguments on the motion to stay on May 17, 2017. On June 13, 2017, the trial court signed an order granting Appellees' motion to stay. According to the order, the court found that BBX's claims submitted to AAA arbitration were not subject to the arbitration clause in the Neches II AMI and that BBX had "waived its right to arbitrate the Subject Claims by substantially invoking the judicial process over the Subject Claims to [Appellees'] detriment." BBX filed an interlocutory appeal with this Court on July 3, 2017. This Court heard oral argument on November 16, 2017.[2]

---

[2] On November 14, 2017, this Court received a supplemental clerk's record in this matter. The supplemental clerk's record includes the following: the trial court's Order Granting Plaintiffs' Motion for Partial Summary Judgment signed September 27, 2017; a combined counterclaim by BBX against AFI and GSEC and petition in intervention by Kodiak, filed October 5, 2017; and AFI's and GSEC's answer to the counterclaim and petition in intervention, filed October 30, 2017. In the counterclaim and petition in intervention, BBX and Kodiak alleged that they are

11

## Issues on Appeal

BBX raises three issues on appeal. In its first and second issues, BBX argues that it established the existence of an agreement to arbitrate, that the claims submitted to arbitration are within the scope of the arbitration agreement, and that Appellees failed to prove any defenses to the existence of the agreement.

BBX argues that BBX's claim is of the "type of claim" that "would necessarily come after the leases have been acquired, when you're making the sites ready to actually drill a well." BBX argues that appellate review may only look to the factual allegations made in a complaint and may not address the merits of the claim, and that Appellees' argument is beyond the scope of appellate review. BBX maintains that the claim "falls squarely under the scope of the [Neches II AMI] Agreement[,]" that it is within the arbitration agreement and it should not have been stayed by the trial court.

In its third issue, BBX argues that it did not waive its contractual right to arbitration because it did not substantially invoke the judicial process, but even if it did, Appellees failed to meet their burden to show they were prejudiced. BBX emphasizes that all pre-arbitration discovery was conducted by Appellees, not BBX,

---

entitled to a recovery for breach of the "Make My Day Joint Venture and Development Agreement" and alternatively, recovery under quantum meruit. The counterclaim seeks a recovery pursuant to March 2015 lease offerings.

and citing to *In re Bruce Terminix Company*, 988 S.W.2d 702, 704 (Tex. 1998), BBX maintains that participation in discovery does not constitute a substantial invocation of the judicial process. BBX contends that although it sought to compel arbitration fifteen months after the lawsuit was filed, it was "before anything substantial occurred in the case." BBX explains that the case was stayed for nine months due to a party's bankruptcy and that the Texas Supreme Court has found that "mere delay is not ordinarily enough, even if it is substantial[]" to constitute a waiver of the right to arbitrate. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015). BBX further argues that its motion to enforce the Rule 11 Agreement did not substantially invoke the litigation process and that "[v]irtually all of the topics in the Rule 11 Agreement have nothing to do with the claims made by BBX in the arbitration complaint." And, BBX argues that filing its petition for writ of mandamus did not substantially invoke the judicial process, considering the totality of the circumstances. Finally, BBX argues that, even if BBX substantially invoked the judicial process, that Appellees "failed to meet the additional heavy burden of unequivocally establishing they were prejudiced as a result." According to BBX, "the only evidence of prejudice is counsel's statements that fees were incurred." BBX contends that Appellees made nothing more than a generalized complaint about delay and expense without evidentiary support.

## Standard of Review

We have jurisdiction over this interlocutory appeal pursuant to section 171.098(a)(2) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(2) (West 2011); *see also Atlas Gulf-Coast, Inc. v. Stanford*, 299 S.W.3d 356, 359 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (section 171.098(a)(2) "allows an interlocutory appeal from an order granting an application to stay arbitration").

We review the scope of an arbitration agreement de novo, looking only to the factual allegations in the complaint. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001). We do not weigh the merits of the claim. *See Universal Computer Sys., Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 749 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Whether a party has waived its right to arbitration is a question of law we review de novo. *See Perry Homes*, 258 S.W.3d at 598. Whether a party has been prejudiced is also a question of law we review de novo. *Id.* We will consider Appellant's third issue first.[3]

---

[3] Solely for purposes of our review of the third issue, we assume without deciding that BBX's claim is within the scope of the Neches II AMI's arbitration clause.

14

Applicable Law Regarding Waiver of Arbitration

"There is a strong presumption against waiver of arbitration, but it is not irrebuttable[.]" *Id.* at 584. The party opposing arbitration based on the affirmative defense of waiver has the burden to prove waiver. *See In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 695 (Tex. 2008) (original proceeding). "Due to the strong presumption against waiver of arbitration, this hurdle is a high one." *Perry Homes*, 258 S.W.3d at 590.

The test for determining waiver asks (1) whether the party seeking arbitration substantially invoked the judicial process; and (2) whether the opposing party proved it suffered prejudice as a result. *See IBS Asset Liquidations v. Servicios Multiples Del Norte SA de CV*, 419 S.W.3d 573, 575 (Tex. App.—San Antonio 2013, pet. denied) (citing *In re Medallion, Ltd.*, 70 S.W.3d 284, 288 (Tex. App.—San Antonio 2002, orig. proceeding)); *see also G.T. Leach Builders*, 458 S.W.3d at 511-12. Waiver of arbitration rights may be expressed or implied. *See In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 626 (Tex. 2008). Express waiver occurs when a party affirmatively indicates that it wishes to litigate the dispute. *See id.* Implied waiver occurs when the party substantially invokes the judicial process to the other party's detriment. *See Perry Homes*, 258 S.W.3d at 589-90; *J.B. Hunt Transport,*

15

*Inc. v. Hartman*, 307 S.W.3d 804, 810 (Tex. App.—San Antonio 2010, orig. proceeding).

Whether a party has waived arbitration is decided on a case-by-case basis, based upon the totality of the circumstances. *See G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 591). Among the factors a court considers relevant to determining whether implied waiver has occurred are the following: whether the party asserting the right to arbitrate was plaintiff or defendant in the lawsuit, how long the party waited before seeking arbitration, the reasons for any delay in seeking to arbitrate, how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration, whether the party seeking to arbitrate requested the court to dispose of claims on the merits, whether the party seeking to arbitrate asserted affirmative claims for relief in court, the amount of time and expense the parties have expended in litigation, and whether the discovery conducted would be unavailable or useful in arbitration. *See RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (citing *G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590-92). Generally no one factor is dispositive, and waiver may be decided based on only a few of the foregoing factors or even a single factor. *See id.*; *Perry Homes*, 258 S.W.3d at 591. How much litigation conduct

will be considered "substantial" depends on the context. *Perry Homes*, 258 S.W.3d at 593.

A party's request for affirmative relief is an important factor in determining whether a party has substantially invoked the judicial process. *See, e.g.*, *Hogg*, 480 S.W.3d at 786; *Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 520 (Tex. App.—El Paso 2013, no pet.) (appellants substantially invoked the judicial process by, among other things, raising affirmative claims for relief in which they requested a declaratory judgment); *Okorafor v. Uncle Sam & Assocs.*, 295 S.W.3d 27, 40 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (finding that defendants had substantially invoked the judicial process by filing multiple sworn and affirmative defenses, and affirmative claims for relief, including requests for declaratory relief, attorney's fees, and sanctions). Likewise, a party who is aware of an arbitration clause, yet only files a motion to compel arbitration after having engaged in discovery and filed pleadings with the trial court, and after having received an adverse ruling from a trial court, has substantially invoked the litigation process and thereby waived its right to arbitrate. *See Hogg*, 480 S.W.3d at 787-91 (noting that plaintiff's pleadings filed prior to her motion to compel arbitration were filed "with the intent of moving the litigation forward in a judicial setting[,]" after an adverse ruling, she sought to obtain "'a second bite at the apple through arbitration[]'").

Delay alone generally does not establish waiver. *See G.T. Leach Builders*, 458 S.W.3d at 515; *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (citing *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding)). Similarly, purely defensive measures do not substantially invoke the judicial process. *See G.T. Leach Builders*, 458 S.W.3d at 513 (filing a counterclaim did not waive the right to arbitration because the counterclaim was defensive in nature as the counterclaim was compulsory and could be lost if not filed); *Fisher v. Carlile*, No. 01-16-00615-CV, 2017 Tex. App. LEXIS 5895, at *12 (Tex. App.—Houston [1st Dist.] June 27, 2017, no pet.) (mem. op.) (a party's request for injunctive relief was directed at maintaining the status quo, not in seeking a disposition on the merits, and therefore was not inconsistent with arbitration); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 593 (Tex. App.—Dallas 1991, writ dism'd w.o.j.) (examples of defensive measures include filing of a general denial to preclude default judgment and filing of a protective order in response to a discovery request); *see also In re Serv. Corp.*, 85 S.W.3d at 174 (holding that objecting to a trial setting showed intent to avoid rather than to participate in the judicial process). Similarly, a party does not substantially invoke the judicial process merely by participating in discovery. *In re Bruce Terminix Co.*, 988 S.W.2d at 704; *see also G.T. Leach Builders*, 458 S.W.3d at 514. However, if the party engaged in extensive discovery

18

it may have impliedly waived the right to arbitration. *See Nw. Constr. Co., Inc. v. Oak Partners, L.P.*, 248 S.W.3d 837, 848 (Tex. App.—Fort Worth 2008, pet. denied) ("To substantially invoke the judicial process, a party must make a specific and deliberate act after suit is filed that is inconsistent with its right to arbitrate, such as engaging in extensive discovery or requesting a jury.") (citing *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 522 (Tex. App.—Austin 1998, no pet.)).

"'Merely taking part in litigation is not enough[.]'" *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (quoting *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d at 763). A party opposing arbitration must also show it was prejudiced by the other party's substantial invocation of the judicial process. *See G.T. Leach Builders*, 458 S.W.3d at 511-12; *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 543 (Tex. 2014); *William Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Showing prejudice is generally an evidentiary burden. *See IBS Asset Liquidations*, 419 S.W.3d at 575 (citing *Williams Indus.*, 110 S.W.3d at 135). However, a party opposing arbitration is not required to detail the extent of prejudice, only that prejudice resulted. *Perry Homes*, 258 S.W.3d at 599. An appellate court's review is limited to the record before the trial court. *Id.* at 596 n.89.

Prejudice or detriment in this context means an "inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Fleetwood Homes*, 257 S.W.3d at 694 (quoting *Perry Homes*, 258 S.W.3d at 597). An inherent unfairness may exist when a party is first forced to litigate an issue, and later required to arbitrate the same issue. *Perry Homes*, 258 S.W.3d at 597. Alternatively, inherent unfairness may result when a party seeking arbitration first uses the judicial process to gain access to information that would not be available in arbitration. *See G.T. Leach Builders*, 458 S.W.3d at 515. Courts also consider whether a party incurs additional costs and fees due to its opponent's arbitration demand. *See Williams Indus.*, 110 S.W.3d at 135.

Analysis

The trial court's order granting the motion to stay arbitration found that "BBX waived its right to arbitrate the Subject Claims by substantially invoking the judicial process over the Subject Claims to [Appellees'] detriment." We find no error.

BBX argues that all pre-arbitration discovery was conducted by Appellees, not BBX, and that it sought to compel arbitration fifteen months after the lawsuit was filed, "before anything substantial occurred in the case." Generally merely responding to discovery requests is insufficient to constitute a substantial invocation of the judicial process. *See In re Bruce Terminix*, 988 S.W.2d at 704. And "mere

20

delay is not ordinarily enough, even if it is substantial[,]" to show waiver of the right to arbitration. *See G.T. Leach Builders*, 458 S.W.3d at 515. Therefore, these factors would weigh against a finding of waiver.

However, we cannot agree with BBX's argument that it did not substantially invoke the litigation process by seeking enforcement of the Rule 11 Agreement in the trial court or on mandamus to this Court. At trial, BBX affirmatively sought relief in the trial court when it sought to enforce the parties' Rule 11 Agreement. The record supports an inference that the Rule 11 Agreement addressed the same claims and expenses that are the subject matter of BBX's demand for arbitration: BBX's May 2015 cash call letters to AFI, which served in part as a basis for the underlying lawsuit, address expenses for properties covered by the Neches II AMI, and BBX's arbitration demand addresses claims relating to the same properties over the same period of time and covered by the same AMI. BBX then received an adverse ruling when the trial court denied BBX's motion to enforce the Rule 11 Agreement. Only after receiving this adverse ruling did BBX file its demand for arbitration. Shortly thereafter, BBX also affirmatively sought mandamus relief in this Court.

In the petition for mandamus relief, BBX argued to the trial court that it had not "filed a motion for summary judgment seeking to dispose of this case on the merits." However, a motion for summary judgment is not the only manner in which

21

a party may substantially invoke the judicial process. *See, e.g.*, *Hogg*, 480 S.W.3d at 785-86, 790-91 (court concluded that party had sought affirmative relief by filing a claim for declaratory judgment and seeking a constructive trust on disputed monies). Considering the totality of the circumstances as demonstrated by the record, we conclude that the trial court did not err in concluding that BBX substantially invoked the judicial process. BBX sought affirmative relief from both the trial court (in its motion to enforce the Rule 11 Agreement) and received an adverse ruling before it later sought to have the matter referred to arbitration.

Whether BBX's implied waiver of its right to arbitration caused prejudice to the Appellees is an evidentiary matter. *See IBS Asset Liquidations*, 419 S.W.3d at 575 (citing *Williams Indus.*, 110 S.W.3d at 135). Appellees were not required to detail the extent of prejudice, only that prejudice resulted. *See Perry Homes*, 258 S.W.3d at 599. Appellees argued to the trial court that they would be prejudiced by arbitration because they had incurred attorney's fees in making its claim for declaratory judgment, mediating and negotiating the Rule 11 Agreement, advancing its own motion to enforce the Rule 11 Agreement, and responding to BBX's petition for writ of mandamus. At the hearing on the motion to stay, Appellees argued that proceeding in two forums, both litigation and arbitration, risked a "piecemeal determination of the issues" with potentially inconsistent results. Additionally, an

22

executive for Appellees testified that Appellees had paid attorney's fees for mediation. On the record before us, we cannot say the trial court erred in concluding that BBX waived its right to arbitrate by substantially invoking the judicial process to Appellees' detriment. The trial court could have reasonably concluded that an "inherent unfairness" existed as a result of BBX's "'attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *See In re Fleetwood Homes*, 257 S.W.3d at 694 (quoting *Perry Homes*, 258 S.W.3d at 597).

We overrule Appellant's third issue. Having determined that BBX waived its right to arbitration, we affirm the trial court's order on that basis, and we need not address Appellant's first and second issues. *See* Tex. R. App. P. 47.1.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 16, 2017
Opinion Delivered February 1, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.

23